Pitts., Va. & Charleston Ry. Co. *v.* Pitts., Canonsburg & State Line R. R. Co., Appellant.

[Marked to be reported.]

*Railroads—Location.*

The requisites of a valid location of a railroad, as to third persons and rival corporations, are (1) a preliminary entry by engineers and surveyors who run and make out lines, map them and report them to the company; and (2) the adoption of such a line by the board of directors.

*Railroads—Branches—" Appurtenances "—Act of March* 31, 1868.

Under the act of March 31, 1868, P. L. 66, which authorized the Monongahela Valley Railroad to build a railroad, " with power to construct such branches as the directors may deem necessary, and to connect all or either of them with any railroad or railroads now constructed or that may hereafter be constructed," and provided that the railroad should be completed within five years, the power to build branches was a continuing power, and the time fixed for the completion of the railroad had no relation to the building of the branches.

In the subsequent act of Feb. 7, 1873, P. L. 126, which gave five years additional time for the completion of the railroad, "with one or more tracks, sidings, depots and appurtenances," the word " appurtenances " did not include branches, and the limitation of the act did not apply to the construction of branches.

*Location of Railroad—Stakes—Estoppel.*

Where a railroad company has located a line of railroad, and marked the location by stakes, failure to maintain the stakes and keep them in position will not estop the company from asserting its right to the location against another company subsequently locating railroad over same route.

*Location—Abandonment—Laches—Act of March 21, 1871.*

A delay of five years and two months in building a branch railroad after its location, is not evidence of its abandonment by mere lapse of time.

The act of March 21, 1871, P. L. 231, providing " that whenever any turnpike, plank road, canal or slackwater navigation or public highway of any company or corporation has been or shall have been for the period of five successive years or upwards, decayed, out of repair and unused for the purpose mentioned in the charter of said company, the same shall be deemed and held to be abandoned," does not apply to railroad companies.

*Railroads—Location—Abandonment—Parties.*

One railroad company has no power to raise a question as to the abandonment or forfeiture of another railroad company's location. Such a question is for the commonwealth alone.

*Registration of corporations—Act of June 1, 1889.*

The direction of the act of June 1, 1889, P. L. 420, as to registration is merely directory, and concerns the payment of state taxes only. It does not mean that the companies shall not go into operation until they register, but only designates the time when they shall register, and, if they do not do so in the time specified, become liable to the penalty provided by the act.

Argued Nov. 9, 1893. Appeal, No. 288, Oct. T., 1893, by defendant, from decree of C. P. No. 1, Allegheny Co., June T., 1892, No. 835, on bill in equity in favor of plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity to restrain defendant from interfering with plaintiff's location of a branch railroad.

The case was referred to John D. Shafer, Esq., as master, who reported as follows:

" The bill alleges the incorporation of the plaintiff, with power to construct branches, the building of its main line, the location and adoption of a branch of plaintiff's road on Peters' creek,

the beginning of the construction of this branch and the intention to complete it; the incorporation of the defendant company to construct a railroad from Pittsburgh through Canonsburg to the West Virginia line; that defendant has not constructed any road between those points, and that no practical route between those points would pass anywhere near where the plaintiff was engaged in constructing its road. The bill then charges that the defendant is grading, excavating and filling at various points upon plaintiff's branch road in such a manner as will, if permitted, prevent the construction of plaintiff's said branch.

" The answer admits the incorporation of plaintiff, but calls for proof of its charter powers and admits the construction of plaintiff's main line; denies the location and adoption of the plaintiff's branch line alleged in the bill at the beginning of its construction; admits the incorporation of defendant company as alleged; denies the negative allegations of the bill as to its main line and as to its road not going anywhere near the points where plaintiffs were at work, and admits that it is grading 'its railroad' at the points mentioned, and that the construction thereof will prevent the construction of any railroad by plaintiff at those points.

" The defendant does not allege that it has located or adopted any main line or any branch thereof, or show by what right or under what authority it is building a railroad at the points named, nor does it aver that the location of plaintiff's branch was forfeited or abandoned.

" [The issue formed by these pleadings seems to the master to be in strictness confined to the fact and the validity of the location of plaintiff's branch.] [1]   He deemed it proper, however, to take the evidence reported herewith in order that all the facts which may be deemed to bear on the case in any view of it may be before the court.

" The master finds the facts of this case to be as follows : The plaintiff company was incorporated by an act of assembly approved April 18, 1867, P. L. 897, under the name of the Monongahela Valley Railroad Company. By act of March 31, 1868, P. L. 726, the company was authorized to build its road on a somewhat different route, ' with the power to construct such branches as the directors may deem necessary and to connect all or either of them with any railroad or railroads now constructed

or that may be hereafter constructed; and by the same act the time for completion of the railroad was extended five years.' Before this time expired, by act of February 7, 1873, P. L. 126, the time for its completion, 'with one or more tracks, sidings, depots and appurtenances,' was extended for five years from January 1, 1873.

" The plaintiff's road was completed from Pittsburgh to Monongahela City by October, 1873. In November, 1886, John M. Byers, chief engineer of the company plaintiff, began the making of surveys of a branch line from Peters Creek, a station on plaintiff's main line, between Pittsburgh and Monongahela City, up the valley of Peters Creek to a point near McDonald station on the Panhandle Railroad. The surveys and a map of them he completed in January, 1887. He marked the line on the ground by pins at irregular distances, indicating the center line of the railroad, the curves being run in and marked, but the cuts and fills not being indicated in any way, nor the width of the right of way to be appropriated. It does not affirmatively appear that this survey was made by him pursuant to any action taken by the direction of the company.

" On March 25, 1887, this map was before the board of directors of the company plaintiff, at a special meeting, and the following resolution was adopted: ' On motion, Resolved, That it is deemed necessary that a branch line of railroad shall be constructed from a point on the main line of this company's road, at or near Peters Creek station ; thence southwesterly to a connection with the Chartiers Railway at or near Bridgeville station, and also a connection with the Pittsburgh, Cincinnati and St. Louis Railway at or near McDonald station, all in the counties of Allegheny and Washington ; and the construction of the same is hereby authorized according to the route as designated on a map now before the board, subject to such minor modifications as the president may deem wise during the construction thereof. And the said map is ordered to be verified by the secretary and filed in the office of the company.'

" No other or further action was ever taken by the board of directors as to this branch. The map in question was produced in evidence, verified by the secretary as directed by the resolution. While there was some talk by Mr. Du Barry, president of the company, with a contractor who may or may not

have made bids on the work, nothing was in fact done towards the construction of this branch road from the date of this resolution, March 25, 1887, to May 3, 1892.

" The defendant company was incorporated October 24, 1889, under the provisions of the act of April 4, 1868, P. L. 62, to construct a railroad from Pittsburgh through Canonsburg to the West Virginia line.  On October 28, 1889, four days thereafter, the board of directors of the company defendant passed the following resolution : ' Resolved, That the line of the Pittsburgh, Canonsburg and State Line Railroad be as follows : Commencing at a point in the city of Pittsburgh, thence via the valley of Saw Mill Run to Castle Shannon ; thence via the most practicable route to Canonsburg, Pa.; thence via Houstonville and McConnell's Mills to the point of divergence of the two lines on what is known as the Rea farm ; thence to the state line of Pennsylvania and West Virginia, as the board of directors may hereafter determine.  Carried.'

" [Whether the survey of the line adopted by this resolution was made within the four days preceding its adoption does not clearly appear from the evidence, but it does not seem probable it was so made.] [3]

" [On August 2, 1890, and November 23, 1891, resolutions of the board were passed relating only to the part of the line from the Rea farm to the West Virginia line.  No other corporate action was ever taken with regard to the location of the main line.] [5]

" On April 22, 1890, the executive committee of the defendant company appointed a committee to look up a route for a branch line from some point on the line of their road between Canonsburg and Castle Shannon to the Monongahela river. On July 22, 1890, the following resolution was passed by the board of directors of said company :

" ' Whereas, The executive committee of Pittsburgh, Canonsburg and State Line Railroad Company have had surveyed and advise the adoption of a branch line to the Monongahela river.

" ' Therefore, Be it resolved by the board of directors of this company that they do hereby adopt and permanently locate a branch road as follows : Beginning at a point on the main line of the P. C. & S. L. R. R. at or near Library, Allegheny county,

Pa., thence by way of the valley of Peter's Creek, to a point at or near the mouth of said creek at the Monongahela river, following the surveys made by R. L. McCully, chief engineer, as near as may be practicable.  Unanimously adopted.'

" At the time the survey referred to in this resolution was made, the stakes put in by the company plaintiff on its branch line up Peter's Creek had almost disappeared.    There were some stakes to be found which would indicate a prior location of a railroad but not by whom it was made.    This line in many places was laid over the same ground as plaintiff's branch.

" [Nothing further was done by either party until May, 1892. On May 3, 1892, the plaintiff company began to retrace its line. On May 11, 1892, the defendant company began the work of grading which is complained of in the bill.] [6]   On May 14th the plaintiff company likewise began grading, and May 28, 1892, this bill was filed.

" [The defendants ask the master to find that the location of the plaintiff company was not made in good faith.    This he takes to mean that they located the road without any intention of building it, or of building it in any definite or reasonable time, but only to forestall others.    There is no evidence from which such a finding would be justified.] [7]   It was not for more than a month after the location that the engineer was ordered to suspend operations, and that and the subsequent fact that it was not built is all there is from which an intention not to build it could be inferred.

" The defendants also ask the master to find that the plaintiff company had abandoned the branch line in question.   As this involves the consideration of some matters of law, the findings of fact in respect to that matter are postponed to a subsequent part of this report.

" The defendant company did not register in the office of the auditor general under the provisions of the act of June 1, 1889, section 19, P. L. 420, until November 14, 1892.

" Upon these facts the company plaintiff contends that its location should be held good and valid and prior in right, as it is in time, to that of defendants, and that the defendant company not having located its main line has no right to build a branch line, and not having complied with the law as to registration has no right to go into operation.

· " The contention of the defendant is : (1) That the plaintiff company had no authority to lay out a branch road, because the time allowed for the completion of the road, to wit: five years from January 1, 1873, had long expired before the branch in question was located.   (2) That the plaintiff's location was to be deemed abandoned in July, 1890, or that it was forfeited. (3) That the plaintiff is estopped from asserting a right to the location claimed by it.

" Mr. Justice WILLIAMS remarks in Williamsport R. R. Co. v. R. R., 141 Pa. 414, that it is singular that the question of what constitutes a valid location of a railroad should be to any extent an open one in Pennsylvania.   It is certainly equally singular that the law of Pennsylvania does not seem to prescribe any means of preserving the evidence of such location , or of giving notice of it, or require any notice of it to be given, or in the case of a branch seem to prescribe any time within which the work shall be begun or completed.   In the case just cited the requisites of a valid location, as to third persons and rival corporations, are said to be a preliminary entry by engineers and surveyors who run and make out lines, map them and report them to the company, and the adoption of such a line by the board of directors ; and all this is to be proved as any other facts, and when proved has the same effect upon all interested as though it had been recorded.   The locations of the ' branches ' of both plaintiff and defendant appear to conform to these requisites.

" As stated, it does not appear that the plaintiff's survey was ordered by the board of directors, and if it were not for the statement of the requisites of a valid location in the case just cited, the master would be inclined to think that an order of the board of directors that the survey be made was requisite. The act of 1849 provides that the president and directors of such company shall have power by themselves, their engineers, agents, artisans and workmen to survey, ascertain, locate, fix, mark and determine such route for a railroad as they may deem expedient, etc.

" In New Brighton R. R. Co. v. Pittsburgh R. R. Co., 105 Pa. 13, it was held that the adoption of a survey made before the incorporation of the company did not constitute a valid location.   Why should the adoption of a survey made by some

of the employees of the company without the authority of the directors have any greater effect? It is the 'president and board of directors' only who have power and authority to survey, ascertain, etc. The case in 141 Pa., however, stating the requisites of a valid location, does not include this among them.

"The act of April 8, 1868, P. L. 766, gives the plaintiff power to build a road, 'with power to construct such branches as the directors may deem necessary and to connect all or either of them with any railroad or railroads now constructed or that may hereafter be constructed.' This is evidently intended to give the special authority to make branches referred to in section 10 of the general railroad act of 1849, P. L. 79, and seems to be equivalent to the branching power conferred by sec. 9 of the railroad act of April 4, 1868, P. L. 62. [This appears to be a continuing power and the time fixed for completion of the railroad appears to have no relation to the building of the branches.] [9] There seems to be no case expressly deciding the point, but it appears to the master that it is of the very nature of the branching power that it should be continuous. If the branches are all to be begun and finished with the main line, there would seem to be no reason why their location and termini should not be stated in the charter or act of incorporation, as well as those of the main line, and not left to be afterwards determined by the directors as they may deem it necessary, or to be connected with roads thereafter to be constructed.

"It is argued by defendant's counsel that when the plaintiff company, by act of February 7, 1873, was given time to complete its road, 'with one or more tracks, sidings, depots and appurtenances,' the word appurtenances comprehended branches, and that therefore the limitation applies to the construction of branches, and that branches cannot therefore be constructed thereafter. If this reasoning be sound it will follow that after January 1, 1878, the plaintiff company had no power to build a single additional track, siding or depot. [It seems to the master that if the defendant's contention be correct that branches are appurtenances within the meaning of that act, their collocation with tracks, sidings and depots is an argument for the continuous nature of the power to construct them rather than against it.] [10]

" If then the plaintiff had a right to locate the branch and did locate it, has it abandoned it or suffered it to be forfeited? As has been already remarked, there is no allegation in the answer to that effect. It is deemed proper, however, that the whole case as presented by the evidence taken should be discussed. If the plaintiff's location is to be deemed to have been abandoned, it must be either because the facts and circumstances warrant an inference of an actual intention to abandon, or because they justified the defendant in acting upon the supposition of an abandonment and so estop the plaintiff, or because the lapse of time was such that the law will presume an abandonment, or because the law has declared certain acts to be an abandonment. [In this case there is no evidence whatever of an actual intention to abandon, but on the contrary the evidence is all the other way.] [11]

" The facts relied on to estop the plaintiff are, that the plaintiff did not keep its line staked so as to give notice to the defendant of its location, and certain conversations had by officers of the defendant company with D. P. Corwin, secretary of the company plaintiff. No statute requires a railroad company after making a location to watch the pins or marks put in and keep them in position, just as no statute requires any map or location to be recorded. [The failure of the plaintiff to do so was therefore not an act which prejudiced the defendant by leading it to believe the plaintiff's branch line to be abandoned.] [12] Indeed if it be true that the defendant company did not in fact know of the plaintiff's location when its own was made it cannot have relied on any evidence of the abandonment of that which it did not know existed.

" As to the conversations with D. P. Corwin, it is sufficient to say that in none of them does he appear to have spoken or was he supposed to have spoken as secretary of the company plaintiff, or in any way for the company, but as a friend of Mr. Meyran, president of the defendant company, and as a landowner in the valley of Peter's Creek.

" That an abandonment might be presumed from a great lapse of time is very probable. [In the case of the West Penn Railroad Company's Appeal, 104 Pa. 399, a much longer time had elapsed than the five years and two months delay in this case, and while the point was not decided in that case because the

party claiming the abandonment was held not to have standing
to make such claim, yet the defendant in this case has just the
same standing and no more.   In the absence of any definite
ruling, and considering the relatively long time necessary for
the construction of so extensive and costly a work as a railroad,
it would be presumptuous for the master to say that a delay of
five years and two months in building a branch railroad is evi-
dence of its abandonment by mere lapse of time.   The legis-
lature having fixed no limit, perhaps no court would be justified
in fixing one short of the time in which a surrender might be
presumed by prescription.] [13]

" The defendant however relies on the provisions of the act of
March 22, 1871, P. L. 231, as applying to this case and making
the facts of this case conclusive proof of abandonment.   The
act provides, ' That whenever any turnpike, plank road, canal
or slackwater navigation or public highway of any company or
corporation . . . . has been or shall have been, for the period
of five successive years or upwards, decayed, out of repair and
unused for the purposes mentioned in the charter of said com-
pany, the same shall be deemed and held to be abandoned . . . .
and such condition and nonuser may be given in evidence in
any suit or proceeding wherein the facts of such abandonment
may be material and shall be conclusive proof thereof.'   [This
act does not seem to apply to railroads.] [14]   It is true that
railroads are public highways belonging to corporations, but at
the time of the passage of this act they constituted by far the
largest and most important class of such highways, and it is
not to be supposed that the legislature intended to include them
under this general name, after mentioning by name turnpikes
and canals.   This case is like that in Coke's Reports, referred to
in Blackstone's Commentaries, where a statute regarding ' deans,
prebendaries, parsons, vicars and others having spiritual pro-
motion,' was held not to extend to bishops, on the ground that
persons or things of a higher degree were not to be supposed to
be included in general words following an enumeration of those
of a lower degree.   [Besides, the act evidently applies only to
the case of the highways which have been once built and then
suffered to fall into decay for five successive years, and not to
those which have never been built.] [15]

" However all this may be, it does not appear that the defend-

ant is in a position to raise a question as to the abandonment or forfeiture of plaintiff's location. [This is for the commonwealth alone.] [16] It was held in the Pennsylvania R. R. Company's Appeal, supra, that the act of June 19, 1871, P. L. 1361, did not give third persons the right to assume the position of the commonwealth as in a writ of quo warranto, and to prove the nonuser of a franchise to establish a forfeiture.

" What has been said covers the third claim of defendant, that of estoppel.

" The direction of the act of June 1, 1889, as to registration is merely directory and concerns the payment of state taxes only. It does not mean that the companies shall not go into operation until they register, but only designates the time when they shall register, and if they do not do so in the time specified, they become liable to the penalty provided by the act.

" [The master is therefore of opinion that the plaintiff has shown a valid location of a branch railroad over the points at which the defendant is engaged in grading prior in time and in right to the defendant's location; that this location is still valid and the plaintiff company alone has the right to build a railroad on or over the points named, and that therefore plaintiff is entitled to an injunction as prayed for.] " [17]

Exceptions, among others, to the findings of the master as in brackets above, were overruled, and a decree entered enjoining defendant from interfering in plaintiff's branch road.

*Errors assigned* were (1) entry of decree, quoting it; (2) in not dismissing bill; and (3) in overruling exceptions, quoting them.

*Johns McCleave* and *George W. Guthrie*, for appellant.— Plaintiff's branch road was not located in good faith with any present intention of building it, and, if it was, the superior right attaching to priority of location has been lost by laches or neglect to actually occupy the ground.

The statute imposed a time within which the company should complete its main line and appurtenances, and having been incorporated subject to the general railroad act of 1849, the statute also imposed a limit of time within which the work of constructing the main line should be commenced, and it is so

expressly provided that if the work was not commenced within three years, and completed within the time limited in the special act, the charter should be null and void.

Fair interpretation of their charter would be that any branch resolved upon should be built within a reasonable time, and, in ascertaining what is such reasonable time, the court is justly entitled to look to the time fixed by the legislature for the construction of the main line.

If it be, as held by the master, that nothing short of the period of prescription would have the effect of destroying the priority of right obtained by priority of location, then any railroad with branching powers could easily preserve an entire section of the state for its exclusive use, at such times as it might please to serve the public needs, by merely resolving to build branches over all available routes for railroad construction in the counties through which they run. Such is not the law : Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 116.

Even under the theory of the master and the court below, plaintiff company has shown no right to an injunction.

The act incorporating plaintiff company did not give it the power to build the branch now in controversy. Such power, if it exists at all, must be found in the supplement of March 21, 1868, which authorized it to build " such branches as the directors may deem necessary," and extends the time for the completion of the road for five years, (this power being given by a supplement to plaintiff's charter is a mere license which may be revoked at pleasure : Phila., etc., Co.'s Ap., 102 Pa. 123,) and the road not being built within the period covered by this extension, the act approved Feb. 7, 1873, provided that " the time for the completion of the Pittsburgh, Virginia & Charleston R. R., with one or more tracks, sidings, depots and appurtenances, is hereby extended for the term of five years from January 1, 1873."

The act expressly referred to the main line, the tracks, the sidings, the depots, and unless the word appurtenances is to be construed as covering simply what had already been specifically mentioned, it could not be construed in any sense that will not cover branches: P. W. & B. R. R. v. Williams, 54 Pa. 103 ; Newhall v. Galena & Chicago Union R. R., 14 Ill. 273 ; Morris & Essex R. R. v. Central R. R., 31 N. J. 210 ; Atlantic & Pac. R. R. v. City of St. Louis, 66 Mo. 228.

The distinction between the property rights of such a corporation, and its corporate rights, which it holds under its contract with the state, is very plain: Williamsport etc. R. R. v. Phila. etc. R. R., 141 Pa. 407.

The location has been abandoned by plaintiff company. A location may be lost by an abandonment in fact, or by doing or failing to do such things as the law declares shall operate as an abandonment in law. Both species of abandonment exist in this case: Central Iowa R. R. v. M. & A. R. R., 10 A. & E. R. R. Cas. 143; Henderson v. Central Pass. R. R., 20 A. & E. R. R. Cas. 542.

Plaintiff company is now estopped from asserting its right to the location now claimed by it.

*William Scott, George B. Gordon* with him, for appellee.— The evidence offered before the master, outside of that tending to prove or disprove that plaintiff had made a valid location of its branch, was irrelevant: Dan. Ch. Pr. *712, *853.

The evidence shows a regular and valid location by the plaintiff of its branch railroad on Peter's Creek: Williamsport & North Branch R. R. v. Phila. & Erie R. R., 141 Pa. 407.

The location and construction of a branch railroad are on the same footing as to the powers of the corporation exercising the right as the location and construction of the main line: Pittsburgh v. P. R. R., 48 Pa. 355; Getz's Ap., 10 W. N. 453; Volmer's Ap., 115 Pa. 166; Neal v. Pittsburgh & Connellsville R. R., 2 Grant, 137; Wadhams v. Lackawanna & Bloomsburg R. R., 42 Pa. 305; Beale v. P. R. R., 86 Pa. 509; Pittsburgh, Virginia & Charleston R. R. v. Com., 101 Pa. 192; Davis v. Titusville & Oil City Ry., 114 Pa. 308; Williamsport & North Branch R. R. v. Phila. & Erie R. R., 141 Pa. 407.

When a railroad company has made its location, its title as against a rival company is complete. Settlement with the landowner is only requisite to enable the company to enter, and after such location another company cannot cover the same location, agree with the landowners, and occupy the land, as against the company making the prior location: Titusville & Petroleum Centre R. R. v. Warren & Venango R. R., 12 Phila. 642; Williamsport & North Branch R. R. v. Phila. & Erie R. R., 141 Pa. 407; Weidenfeld v. Sugar Run R. R., 48 Fed. R. 615; Sioux City etc. Ry. v. Chicago etc. Ry., 27 Fed. R. 77.

The case of P. W. &. B. R. R. v. Williams, 54 Pa. 103, cited by defendant, decides no such proposition as that advanced by defendant, but rather the contrary. The P. W. & B. R. R. Co. has no branching powers : 1 Dist. R. 73. The track involved in the case cited was not a "branch," but a siding running into an engine house, so that it was a mere "appendage " of the main line.

The decision in Getz's Ap., 10 W. N. 453, and in C. & P. R. R. v. Speer, 56 Pa. 335, are to the effect that such a track or siding as that involved in P. W. & B. R. R. v. Williams, may be constructed by a railroad company as a necessary part of its railroad as such without express authority to construct " appendages."

In Newhall v. Galena & Chicago Ry., 14 Ill. 273, relied upon by defendant, the court intimates its opinion that the branching power was a continuous one, but found it unnecessary to decide the question, for the reason that the extension of time beyond that originally limited for the construction related to both main line and branch, and the branch was being constructed within the limit of the extended time.

In Morris & Essex R. R. v. Central R. R., 31 N. J. 211, defendant had no general branching power at all. It was empowered to construct its line with one specific branch, and both main line and branch had been long previously completed.

The case of R. R. v. St. Louis, 66 Mo. 228, relied upon by defendant, is an authority, if not against him, certainly not in his favor. The actual point decided was that the limitation in an original charter as to the time within which a railroad must be finished does not apply to branch roads which the company was authorized to construct, at least where the right of way therefor was acquired prior to the expiration of the period limited in the charter.

By reason of the act of March 17, 1869, P. L. 12, providing for enlargement and improvement of railroads, etc., cases are rare in Pennsylvania which discuss the continuing power of a railroad company as to the extension of its works, but if authority is necessary the reasoning in the following cases will be found pertinent : Toledo R. R. v. Daniels, 16 Ohio, 390 ; C. B. & Q. R. R. Co. v. Wilson, 17 Ill. 123.

If the testimony which we contend is irrelevant is to be con-

sidered, defendant has not shown any valid location of a branch on Peter's Creek which gives it any right or standing as against plaintiff.

If the surveys were made before the incorporation of defendant company they are of no avail for establishing a location, even if subsequently adopted by proper corporate action : New Brighton & New Castle R. R. Co.'s Ap., 105 Pa. 13.

Whether the surveys were made before or after incorporation of defendant company, they were never adopted by corporate action, and the engineers of a railroad company cannot locate a line so as to give the company title without corporate action : Williamsport & North Branch R. R. v. Phila. & Erie R. R., 141 Pa. 407 ; Weidenfeld v. Sugar Run R. R., 48 Fed. R. 615 ; P. R. R. Co.'s Ap., 116 Pa. 55.

There is no evidence in the case, relevant or irrelevant, in support of defendant's assertion or argument that plaintiff's branch road was not located in good faith.

Plaintiff company has not lost its rights under its location by reason of laches, nor has there been any abandonment of those rights in fact or in law, nor is plaintiff estopped from asserting them as against defendant.  In the West Penna. R. R. Co.'s Ap., 104 Pa. 399, where there was a delay of ten years in constructing a road, it was found there had been no abandonment.  In Union Pass. Ry. Co.'s Ap., 2 Penny. 434, a delay of eleven years in the construction of a branch was held not to be an abandonment.  In Junction Pass. Ry. Co. v. Williamsport Pass. Ry. Co., 154 Pa. 116, cited by appellant, there had been a delay of twenty-eight years without even a location.

Appellant's counsel under the second head of their argument suggest that they have all the rights of the landowner at the point or points of conflict between the location of the respective parties.  The decree in this case protects the landowners, and if defendant has succeeded to them it is in no danger : Titusville & Petroleum Centre R. R. v. Warren & Venango R. R., 12 Phila. 642.

PER CURIAM, December 30, 1893 :

Aided by carefully prepared and able arguments of learned counsel for the respective parties, we have fully considered the master's report, in connection with the bill, answer and proofs,

and with special reference to the assignments of error, and have reached the conclusion that there was no error in overruling the several exceptions specified in the third assignment, or in entering the decree from which this appeal was taken. We are of opinion that the learned master's findings of fact were warranted by the evidence, and that his conclusions of law are substantially correct. Those findings and conclusions, together with the authorities cited in support of the latter, are clearly and concisely stated in his report and need not be repeated here. They warrant the general conclusion that the location claimed by the plaintiff company was regularly and legally made and adopted, and its right thereto has never been relinquished or forfeited; and that, subject to the payment or securing of damages to landowners, it has the lawful right to construct and operate its branch railroad upon said location.

It does not appear to us that there is anything in the case that requires special discussion or further elaboration.

Upon the facts found by the learned master, and for reasons sufficiently stated in his clear and satisfactory report, there appears to be nothing in either of the assignments of error that would justify either reversal or modification of the decree.

Decree affirmed and appeal dismissed with costs to be paid by appellant.