THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY

*v.*

THE CITY OF CHICAGO *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. MUNICIPAL CORPORATIONS—*assent of city to laying railroad track in street is essential.* A city has exclusive authority to grant or refuse permission to a railroad company to lay tracks upon or across streets within the city limits, and in granting such permission it may impose such limitations and restrictions as it sees fit.

2. SAME—*when ordinance does not confer right to lay an additional track.* An ordinance granting permission to lay one or more railroad tracks across certain streets if the tracks are constructed within three years, otherwise the ordinance to be void, gives the railroad company the right to elect whether it will lay one or more tracks within the time specified, and if it elects to lay two tracks part of the way to the city limits and one track the remainder of the way, it cannot, after the expiration of the three years, construct an additional track across the streets and alleys crossed by the single track, without obtaining permission from the city.

3. RAILROADS—*right to condemn and to lay additional tracks across streets are distinct.* The continuing right of a railroad company to condemn and acquire land for additional tracks, side-tracks, etc., does not include the right to provide additional facilities by crossing, with new tracks, streets already crossed by tracks constructed under an ordinance not authorizing the laying of additional tracks.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

JESSE B. BARTON, for appellant.

WILLIAM D. BARGE, (JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The Chicago Terminal Transfer Company filed this its petition for *mandamus* in the superior court of Cook county, against the city of Chicago and F. W. Blocki, commissioner

of public works of said city of Chicago, praying that the said city and its commissioner of public works be compelled, by judgment or order of court, to grant to the petitioner permission to lay a second main track across Seventy-ninth, Eightieth and Eighty-first streets, in said city of Chicago. A hearing was had upon petition and answer. The prayer of the petition was granted, and the appellant city ordered to permit the appellant company to lay down, maintain and operate an additional main track across Seventy-ninth street, Eightieth street and Eighty-first street, in the said city of Chicago, within the exterior lines of its right of way as extended across said streets. An appeal was perfected by the city of Chicago and the commissioner of public works from the judgment entered by the superior court of Cook county to the Appellate Court for the First District, which court reversed the judgment of the superior court of Cook county, and a further appeal has brought the record to this court for review.

On May 13, 1872, the common council of the city of Chicago adopted an ordinance giving, in the first section thereof, permission and authority to the LaSalle and Chicago Railroad Company to lay down, maintain and operate "one or more railroad tracks along and upon" a certain named route and streets in the city of Chicago, which route would intersect Seventy-ninth, Eightieth and Eighty-first streets in the city. Section 2 of the ordinance authorized the said company to "cross any and all streets and alleys and railroad tracks upon or along the line of its said route." Section 10 contained the following proviso: "This ordinance shall be null and void unless the tracks herein provided for shall be constructed within two years from the date of the passage hereof."

The LaSalle and Chicago Railroad Company having changed its name to the Chicago and Great Western Railroad Company, the city council, on the 11th day of May, 1885, passed an ordinance recognizing this change. This

ordinance of 1885 provided that, in addition to the authority granted by the ordinance of 1872, further permission should be given to lay down and operate one or more railroad tracks, with the necessary and convenient side-tracks, switches and appurtenances, on or along a specified route, and also to cross any and all streets, alleys and highways on and along said route, subject to the terms and conditions of the ordinance of 1872, except as expressly repealed by the later ordinance. Section 4 of the ordinance of 1885 expressly repealed the proviso of section 10 of the ordinance of 1872, which required the railroad to be constructed within two years from the passage of that ordinance, and provided that the privilege granted should become null and void "unless the tracks of said company shall be constructed from the terminal station, at or near Harrison street, to the southern or western limits of the said city within three years from the passage of this amended ordinance, said three years to be exclusive of any and all delays arising from or occasioned by legal proceedings against said company, or by the acts of the said city of Chicago, its officers, agents and servants."

The Chicago and Northern Pacific Railroad Company was duly organized, and succeeded to all of the corporate rights, franchises, property and privileges of the Chicago and Great Western Railroad Company.

On July 20, 1891, a third ordinance was adopted, providing that "the obligations imposed upon and the privileges granted to the said Chicago and Northern Pacific Railroad Company, as successor of the Chicago and Great Western Railroad Company, (formerly known as the LaSalle and Chicago Railroad Company,) by an ordinance entitled 'An ordinance concerning the LaSalle and Chicago Railroad Company,' passed May 13, 1872, and the ordinance amendatory thereof passed May 11, 1885, are hereby declared to be in full force and effect to the southern limits of the city of Chicago as they now exist, but upon the same provisions

and conditions as are contained in the said ordinance as amended, as aforesaid, as if they were inserted herein."

The route of the line of railway authorized to be constructed by these several ordinances would intersect Seventy-ninth, Eightieth and Eighty-first streets.

Within three years after the adoption of the ordinance of 1891 the Chicago and Northern Pacific Railroad Company constructed a double track railroad along said authorized route as far south as Seventy-fifth street, and from Seventy-fifth street to Eighty-seventh street constructed a single main track railroad. The single main track crossed Seventy-ninth, Eightieth and Eighty-first streets. The right then existed to construct a double track across these streets, but the company did not avail itself of that privilege but constructed but a single track railroad across those streets. The Chicago and Northern Pacific Railroad Company operated its cars over said double and main tracks until July 1, 1897, when the property, franchises and rights of that company passed to and became vested in the appellant company. The appellant has since then operated its cars over and along said single track and across said Seventy-ninth, Eightieth and Eighty-first streets. In 1904 the appellant desired to lay a second track along its line of railway and across Seventy-ninth, Eightieth and Eighty-first streets. A general ordinance of the city forbade any one from opening or disturbing any street without first obtaining a permit from the commissioner of public works of the city. The appellant company, on April 21, 1904, presented its petition to the city council, alleging that when the said single track railway was constructed a single line of road was sufficient to accommodate the business, but that the demands and convenience of the public have increased and now require that an additional main track should be laid on the route of its railway from Seventy-fifth street to the city limits on the south, and asking that the commissioner of public works issue a permit to the petitioner to lay an additional track across Seventy-ninth,

Eightieth and Eighty-first streets. The commissioner of public works and the city council refused to grant the prayer of the petition, and this writ of *mandamus* was sued out to compel the issuance of such permit.

On the hearing in the superior court, the foregoing facts having been made to appear without dispute, the appellees asked the court, in view of such facts, to hold a proposition of law, in substance, that the appellant company was not entitled to a permit authorizing it to construct the additional track across said Seventy-ninth, Eightieth and Eighty-first streets. The trial court refused to so hold, and the Appellate Court ruled the trial court erred in so ruling. The determination of this issue depends entirely upon the proper construction of the ordinances, and the amendments thereto, as set out in the preceding statement of the case.

Incorporated cities and villages have full and exclusive authority to grant or refuse permission to construct railroads in or across streets within the limits of the municipality, and the appellant company has no right or power to construct its tracks across the streets of the appellee city except in pursuance of an ordinance granting such right. The assent of the city to the laying of the track of a railroad along or upon a public street in the city is a condition precedent to the right of the company to so construct its railroad, and until that consent is obtained the railroad company is without right or power so to enter upon or occupy the street. (Rev. Stat. chap. 114, par. 20; *Tudor* v. *Rapid Transit Railroad Co.* 154 Ill. 129.) And the power or privilege may, when granted, be restricted by such reasonable conditions as the municipality may see fit to impose. *Byrne* v. *Chicago General Railway Co.* 169 Ill. 75.

The appellant company asserts the right to construct its track across the streets in question in virtue of the ordinances of the city. Ordinances granting a special privilege in the streets of a city must, according to the well settled rule for construing public grants, be strictly construed against

the grantee and in favor of the public.   (27 Am. & Eng. Ency. of Law,—2d ed.—74.)

Section 4 of the ordinance of 1885 expressly repealed the tenth section of the ordinance of 1872, and in lieu thereof ordained that the original ordinance and the amended ordinance should be null and void "unless the tracks of said company shall be constructed from the terminal station, at or near Harrison street, to the southern or western limits of said city within three years from the passage" of the amended ordinance, and the ordinance passed in 1891 declared that the ordinance of 1885 and the ordinance of 1872 shall be in full force to the southern limits of said city, but upon the same conditions as are contained in the ordinance as amended.   Under these provisions the appellant company argues that since it constructed its road to the southern city limits within three years from the 20th day of July, 1891, the ordinance did not become null and void, but is in full force and effect without that condition, and that the only effect of failure to construct within that period would have been to render the ordinance void.   In other words, the contention is that the building of said road by the appellant company within the three years renders the condition null and void from the time of construction of the appellant company's road, and leaves it free to construct such track as it may desire under the other provisions of the ordinance. We are unable to concur with appellant in this contention. The provision of said section 4 was imposed for the purpose of compelling the appellant company, if it decided to construct its road under the ordinance, to do so within the period of three years, and not for the purpose of rendering the ordinance perpetual as a continuing permission to construct other tracks not builded within the prescribed period. The language of section 2 of the ordinance is: "Permission and authority be and is hereby given and granted to said railroad company to lay down, maintain and operate one or more railroad tracks, with the necessary and convenient

side-tracks, switches and appurtenances, over, upon and along such property as it now holds or has acquired the right to lay tracks upon, or which it may hereafter acquire by purchase, condemnation or otherwise, over, along and upon the following route." The permission is "to lay down, maintain and operate one or more railroad tracks," provided they are laid within the period prescribed by said section 4. It would require a very liberal construction, indeed, to hold that the appellant company, by building some kind of a track or railroad between the Harrison terminal and the southern city limits within the three years, as provided in said section 4, could thereby extinguish said section 4, and at any time thereafter lay as many tracks within the limits of its right of way across the streets named in the said ordinance as it might desire. Such a construction is clearly not admissible. The appellant company had power, in its discretion, to elect, within the three years' limitation of said section 4, whether it would lay down, maintain and operate one or more tracks across the said streets, but such an election, when made, would be final and would exhaust the power or privilege, and no right would exist thereafter, under these ordinances, to lay additional tracks across the said streets of the city of Chicago. The condition in the tenth section of the original ordinance is, "this ordinance shall be null and void unless the tracks herein provided for shall be constructed within two years from the date of the passage hereof." In providing that the condition in the fourth section of the latter ordinance should be in lieu of the condition of the tenth section of the former, as above quoted, the intent must have been merely to substitute the three years' limitation for the two years' limitation found in the earlier ordinance.

In the case of *Snell* v. *City of Chicago*, 133 Ill. 413, on page 435, we said: "By section 7 of the act of February 10, 1849, the company was authorized 'to erect and maintain such toll-houses, toll-gates and other buildings for the ac-

commodation and management of said road and the travel and transport thereon, as the said corporation may deem suitable to its interests.' But when the company had once exercised its discretion by locating the gates, then its power was exhausted." The appellant company had the power, within the period of three years from the passage of the ordinance of 1891, to lay one or more tracks across the streets in question. That discretion has been exercised, the three years have passed, and the discretionary power of the appellant company is exhausted.

The Supreme Court of Georgia, in construing an act of the legislature of that State which authorized the connection of two railroads through the streets of the city of Columbus, "with such side-tracks, turn-outs and sheds as may be necessary for the convenience of freight and passengers," said: "It seems plain to us that side-tracks, etc., which did not become necessary for the convenience of freight and passengers until twenty or thirty years thereafter, could not have been in legislative contemplation when the act was passed. The much safer and more rational construction is that the powers conferred by the act were exhausted by their exercise' and by the consequent connection of the roads." *Savannah Railroad Co.* v. *Woodruff,* 86 Ga. 194.

It is next insisted that it has been held in our State "that a railroad company may, by the exercise of the right of eminent domain, acquire, from time to time, additional property for additional tracks or other railroad facilities, and is not barred by its first location," and that such holdings, and the reasons therefor, are directly applicable to this case. There is a clear distinction between the continuing power of railroad corporations to condemn and acquire land on which to lay additional tracks, side-tracks, etc., and the right claimed here, to provide additional facilities by crossing with new tracks streets already crossed by tracks which were constructed, with the consent of the city authorities, under the terms specified in a city ordinance. As we said

*supra,* incorporated cities and villages have exclusive authority over the matter of railroad crossings in their streets, and a railroad company is absolutely without power to lay its tracks across any public street in the municipality without first obtaining the assent of the city authorities. The fact that the increased traffic and public demand require the construction of another track by the appellant company to better enable it to handle the increased traffic and answer such public demand is a matter for the consideration of the city authorities, and it is for them to determine whether the prevailing conditions in the neighborhood and the public welfare of the city of Chicago require the laying of the additional main track across the said Seventy-ninth, Eightieth and Eighty-first streets.

The judgment of the Appellate Court must be and is affirmed.