THE PEOPLE *ex rel.* P., C., C. & St. L. Ry. Co.

*v.*

THE SOUTH PARK COMMISSIONERS *et al.*

*Opinion filed April 17, 1906—Rehearing denied June 7, 1906.*

RAILROADS—*company cannot lay additional track across streets without assent of municipality.* A railroad company cannot lay an additional track across streets and boulevards without the assent of the municipal authorities vested with the control thereof, notwithstanding increased traffic and the welfare of the traveling public seem to require such track. (*Chicago Terminal Transfer Railroad Co.* v. *City of Chicago,* 220 Ill. 310, followed.)

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

LOESCH BROS. & HOWELL, for appellant.

HOLLETT, SAUTER & HENKEL, for appellees.

Per CURIAM: The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company filed its petition in the superior court of Cook county against the South Park Commissioners and the individuals comprising the same, for a writ of *mandamus* to compel the defendants to grant to the relator a permit to construct an additional railroad track across Garfield boulevard. In its petition the relator alleged that it was a consolidated corporation, organized under the laws of this State October 25, 1890, with power to purchase, construct, maintain and operate a railroad from the city of Chicago, in this State, to the city of Pittsburgh, in the State of Pennsylvania; that it was the owner of a strip of land one hundred feet in width across Garfield boulevard, in the city of Chicago, which had been exclusively and continuously owned and used by relator and its predecessors in title more than forty years for the right of way for its railroad; that in 1864 the Chicago and Great Eastern Railway Company had authority, by its charter, to acquire such real estate and lay

such tracks thereon as its necessities and public convenience and safety might require in the conduct of its business as a common carrier; that in said year said Chicago and Great Eastern Railway Company laid a track on said right of way across the land which is now Garfield boulevard at grade, and subsequently laid an additional track thereon; that by subsequent consolidation and mergers with certain other railroad companies, and under foreclosure sales, all the franchises, property, rights, title and interest of the said railway company owning said right of way and laying said tracks, and its successors in title, became vested in relator; that in 1869 the board of South Park Commissioners was created and empowered to construct a system of parks and boulevards; that said commissioners laid out and improved as a public highway said Garfield boulevard; that by reason of the increased and growing demand for transportation of freight and passengers and to secure the safety of employees and the public, additional facilities had become absolutely requisite and necessary to enable relator to properly, expeditiously and safely operate said railroad and reasonably meet and supply the demands of the public; that it was necessary that relator be permitted to lay a running track along the west fifty feet of its right of way, parallel with its west main track, across said boulevard; that relator is the owner of extensive freight yards along its said railway, extending from a point just south of the south line of the boulevard to Sixty-third street, in which yards its cars are switched from track to track in making up trains; that the only means relator then had for the transportation of its numerous east-bound freight cars was over the east passenger track, upon which the passenger traffic was so great as to tax its capacity for that purpose alone; that relator had been compelled to construct and continuously use facing-point switches connecting its yard tracks with the through passenger track just south of the boulevard and to make use of the passenger track; that the existence and use of the facing-point switches and the fre-

quent moving of freight cars on the passenger track were a constant menace to the lives of the traveling public and its employees, and greatly increased the hazards of operating the railroad; that just west of and joining its right of way where it crossed the boulevard were the tracks of the Chicago Terminal Transfer Company parallel with relator's tracks, and between the tracks of the two railways on the south line of the boulevard was a watch tower; that safety gates had been constructed at the crossing, which were lowered and raised by the watchman; that the property contiguous to the boulevard and crossing was vacant and almost entirely unimproved and the boulevard was comparatively but little traveled; that the proposed running track would not add to the width of said railroad crossing or increase the danger to the public, as it would lie between the west track of the relator and the east track of the terminal company; that relator had requested and demanded of the defendants a permit to lay and construct said running track subject to the reasonable rules and regulations of said defendants and had furnished to the defendants a detailed plan of the proposed construction, and that the defendants had arbitrarily and unreasonably refused to grant such permit.

The defendants answered denying *seriatim* every allegation of the petition except such as related to the creation of the board of park commissioners and the membership of the same, and the location of Garfield boulevard. The answer averred that the defendants had repeatedly offered to permit the relator to cross the boulevard with an additional track if the relator would enter into an agreement to elevate its tracks within a reasonable time, and that relator refused to enter into such an agreement. Replications and rejoinders were filed, and the issues were submitted to the court for trial without a jury. The court found the issues for the defendants and entered judgment denying the writ.

The title of the relator to the strip of land one hundred feet in width crossing the boulevard, alleged in the petition

and denied by the answer, was in controversy at the trial, and the case therefore involves a question which authorizes a direct appeal to this court.

No proposition of law was presented to the court, and the questions to be determined arise upon the objections and exceptions to the findings and entry of judgment. It is contended on one side that the facts averred in the petition were proved and entitled the relator to the writ, and on the other side it is insisted that the relator failed to prove any title except title by adverse possession of a strip across the boulevard, limited in width to the ground occupied by the two tracks now in use, and that the facts justified the judgment.

We are of the opinion that the relator proved title to the strip of land one hundred feet wide across Garfield boulevard constituting its right of way. The Chicago and Great Eastern Railway Company, which was chartered in 1857, was authorized to lay out and construct its railroad, not exceeding one hundred feet in width, and it laid one track across what is now the boulevard on said right of way about 1865; but it was then in the country, and not in any incorporated city, town or village. The second track was laid some time afterward. It acquired the right of way, and the relator is its legal successor in right and title. Adjoining the boulevard on the south lie petitioner's freight yards, extending to Sixty-third street and having a capacity of twenty-six hundred cars. In these yards are received and handled the freight business amounting to six hundred and fifty cars daily. The business has grown to such an extent that relator has been compelled to connect the passenger track of its road with the switch yards by many facing switches, the constant use of which impedes the passenger traffic and is dangerous to the traveling public and the employees of the relator and in a marked degree increases the cost of operation. It is necessary that the additional running track should be laid between the passenger tracks of the relator and the adjacent tracks of the terminal company to relieve the passenger

tracks from this condition. The defendants offered to grant the permit for the additional track provided the relator would enter into an agreement to elevate its tracks across the boulevard by the year 1910, but refused to grant the permit upon any other condition, and the relator refused to enter into such agreement. The tracks of the terminal company cross the boulevard at grade immediately west of the right of way of the relator. The elevation of the tracks across the boulevard would require an elevation across a number of streets north and south not under the control of the defendants but within the jurisdiction of the city of Chicago, and the right to make such elevation would be dependent upon the consent of the city. The elevation of the tracks and the extensive freight yards would involve a great expense, which according to the testimony for the relator would be about $2,000,000. All the material facts averred in the petition were proved, and it remains to determine whether the relator was entitled to the permit without complying with the condition upon which it was offered and which it insists was unreasonable.

In the case of *Chicago Terminal Transfer Co.* v. *City of Chicago,* 220 Ill. 310, the city of Chicago refused to grant a permit to the Chicago Terminal Transfer Company to lay an additional track across Seventy-ninth, Eightieth and Eighty-first streets, in said city, within its right of way. The refusal was absolute and unconditional. A petition for *mandamus* was filed, and the proofs showed, without dispute, that the relator was authorized by its charter to lay the track and that the demands and convenience of the public had increased so as to require an additional main track, but there was no ordinance of the city authorizing the relator to lay the track. The superior court awarded the writ and the Appellate Court reversed the judgment. In this court the judgment of the Appellate Court was affirmed and the law on the subject was stated, as follows: "As we said *supra,* incorporated cities and villages have exclusive authority over the matter of railroad crossings in their streets, and a railroad

company is absolutely without power to lay its tracks across any public street in the municipality without first obtaining the assent of the city authorities. The fact that the increased traffic and public demand require the construction of another track by the appellant company to better enable it to handle the increased traffic and answer such public demand is a matter for the consideration of the city authorities, and it is for them to determine whether the prevailing conditions in the neighborhood and the public welfare of the city of Chicago require the laying of the additional main track across said Seventy-ninth, Eightieth and Eighty-first streets." That decision is conclusive against the relator in this case. This crossing is within the city of Chicago, and the relator recognized by its application to the defendants that they are vested with all the powers relating to Garfield boulevard that are vested in the city with reference to other streets within the corporation.

The judgment is affirmed.    *Judgment affirmed.*