## Chicago City Railway Company, Appellee, v. City of Chicago, Appellant.

## Gen. No. 29,568.

1. APPEAL AND ERROR—*when constitutional questions not involved in appeal to Appellate Court.* The construction of sections 2 and 13 (relating to the taking of property without due process of law and without due compensation) and of section 4 (relating to the impairment of contracts), of article 2 of the Illinois Constitution and of the 14th Amendment of the Federal Constitution, relating to the taking of property without due process, was held not to be involved in an action by a street railway company against a city to recover for money expended in repairing street pavements which had been removed by the city in installing or repairing sewer pipes, where ordinances required the company to repair pavements; and hence the motion to dismiss the appeal and transfer the case to the Supreme Court was denied.

2. STREET RAILWAYS—*liability of city to reimburse street railway company for cost of repairing pavements.* Under ordinances of a city requiring a street railway company, at its own expense, to pave and keep in repair the portions of the streets occupied by it, the expense incurred by the company in repairing and restoring pavements removed by the city to install or repair sewer pipes for the benefit of users whose houses fronted on the streets occupied by the street railway right of way, could not be recovered in an action against such city.

3. STREET RAILWAYS—*power of city to impose conditions for use of street by street railway company.* A city having the exclusive authority to grant or refuse permission to a railroad company to lay tracks upon or cross streets within the city limits, in granting such permission may impose such reasonable limitations and restrictions as it sees fit, such as, by ordinance, requiring the company to fill, grade, pave and otherwise improve the portion of the street occupied by its tracks and between them.

4. STREET RAILWAYS—*voluntariness of repairing of pavements by street railway company as affecting liability of city for reimbursement.* The claimed liability of a city to reimburse a street railway company for the expense of repairing and replacing the pavement removed by the city in installing or repairing sewer pipes was not affected by the fact that the replacements and repairs in question were made by the company without any order given by the Commissioner of Public Works and without the approval of the Board of Supervising Engineers, where such repairs were made voluntarily by the company to protect its property and itself from possible damage suits.

Chicago City Ry. Co. v. City of Chicago, 238 Ill. App. 402.

5. STREET RAILWAYS—*construction ordinance requiring street railway company to "repair" streets.* The word "repair" in an ordinance requiring a street railway company to repair the pavement of streets occupied by its tracks is synonymous with "restore."

Appeal by defendant from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed and remanded with directions. Opinion filed November 13, 1925.

FRANCIS X. BUSCH, Corporation Counsel, for appellant; JAMES J. COUGHLIN, C. MORTON DOTY and JAMES I. MCCARTHY, Asst. Corporation Counsels, of counsel.

JOHN R. GUILLIAMS and CHURCH, HAFT & ROBERTSON, for appellee; CHARLES M. HAFT, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $14,676.46, rendered by the circuit court of Cook county July 22, 1924, against the defendant, City of Chicago. The judgment was entered after the city's demurrer to plaintiff's last amended declaration had been overruled in part and the city had elected to stand by the demurrer.

The action was commenced in tort on February 15, 1921, but was afterwards changed to assumpsit. The plaintiff railway company sought to recover various amounts expended by it from time to time since March, 1914, in replacing or repairing portions of the pavement in its right of way in various streets, where the pavement had been removed or damaged by employees of the city in laying certain connecting water or sewer pipes. The city's demurrer was sustained (without objection by plaintiff) as to all expenditures made more than five years prior to the commencement of the action, but was overruled in all other respects. The parties had stipulated that the city could avail itself of the defense of the statute of limitations on

demurrer and without special plea, and without waiving its other causes of demurrer. There was no dispute between the parties as to whether the expenditures had been made as alleged or as to the reasonableness of the same. The city contended on the hearing of the demurrer, and here contends, (1) that the last amended declaration failed to state facts showing a legal liability on its part to reimburse plaintiff for any of said expenditures, in that the city ordinances of February 11, 1907 and November 13, 1913 (attached to the declaration and made parts thereof), imposed on plaintiff the duty to do, at its expense, the work for which it seeks to charge the city; and (2) that, even though the court should hold against this proposition, the demurrer should nevertheless be sustained as to all expenditures made more than five years prior to the filing of plaintiff's last amended declaration, because that declaration in assumpsit (filed *nunc pro tunc* as of July 10, 1924) presented a different cause of action from the original declaration in tort.

Plaintiff's amended declaration in tort, filed July 20, 1922, consisted of two counts, one relating to expenditures made by it after employees of the city had laid certain connecting *water* pipes and the other relating to expenditures made after connecting *sewer* pipes had been laid. Attached to the declaration as exhibits, and made parts of it, were the two city ordinances and two itemized schedules of expenditures made by plaintiff, one showing items caused by the laying of various water pipes and the other by the laying of sewer pipes. It was stipulated that all these exhibits should be considered as parts of plaintiff's last amended declaration.

In the first count of the last amended declaration it is alleged that both ordinances were accepted and had been complied with by plaintiff; that by the ordinance of 1907 authority was granted to plaintiff, its lessees and assigns to construct and operate its system of street railways in numerous streets of the city,

its duties, obligations and liabilities to the city being therein enumerated; that in section 15 thereof it is provided that plaintiff (called the Company) "shall, *at its own expense,* fill, grade, *pave and keep in repair* that portion of the streets occupied by it, as more specifically provided for in said 'Exhibit B'"; and that in said Exhibit B, attached to the ordinance, the entire subject of maintenance of streets and pavements is treated and provided for, as follows (in part):

"The Company as respects filling, paving, grading, keeping in repair,   *   *   *   , or otherwise improving the streets or parts of streets occupied by its railway, shall fill, grade, *pave, keep in repair   *   *   * eight (8) feet in width of all streets and public ways, or portions thereof, occupied by it with a single track railway, and sixteen (16) feet in width of all streets and public ways, or portions thereof, occupied by it with a double track railway.   *   *   *

"The Company, upon the order of the Commissioner of Public Works and approval of the Board of Supervising Engineers, shall *pave, repave, or repair* the portions of the streets and public ways, which by this grant it is required to *keep paved and in repair, whenever and as often as the same shall reasonably require paving, repaving or repairing,* and shall at all times keep the surface of all of its paving at least up to the top of the rail.

"The pavement which the Company shall be required to lay down and *keep in repair* in the portion of any street or way   *   *   *   shall be of the following kinds, to-wit:

"First—in all streets or ways in which the Company has in place, at the date of the passage of this ordinance, a good serviceable pavement, it *shall repair* and maintain the same while serviceable under the direction of the Commissioner of Public Works, as aforesaid.

"Second—Whenever any existing pavement of the Company, in any paved street or way, can no longer be made serviceable by repair; and whenever the portions of any street or public way outside of the strip

herein required to be paved by the Company are newly paved or repaved, with asphalt, granite, brick, creosoted block, or other similar material, as aforesaid, and the pavement therein of the Company does not comply with the following specifications; and whenever the Company relays its rails in any such paved street or public way in which its pavement does not comply with the following specifications, then, and in any of such events, the Company *shall pave or repave* the portion of any such street or public way  *   *   * with granite paving blocks. (Here follow detailed specifications.)

"Third—Whenever any existing pavement of the Company, in any unpaved street or public way, can no longer be made serviceable by repairs; and whenever the Company lays down any track or tracks in any unpaved street or public way, then, and in either of such events, the Company *shall pave or repave* the portions of any such street or public way  *   *   * with good serviceable granite blocks.  *   *   *"

It is further alleged that the Commissioner of Public Works has at no time ordered plaintiff to do any of the work in this count mentioned, nor has the Board of Supervising Engineers at any time approved any such order of the commissioner; that plaintiff did not construct or reconstruct any portion of its tracks, equipment or roadbed in any of the streets, as shown in the schedule attached, before sewer and water pipes were laid therein or before said streets were paved, and that "it is only the small sewer and water pipes connecting said main sewer and water pipes (running parallel with said tracks) with the property abutting upon said street that are constructed at right angles to the tracks of the plaintiff"; that the city, "in its private as distinguished from its governmental capacity," maintains and operates a system of water works and mains from which it sells water to private consumers; that, while acting in such capacity, it has on numerous occasions and at numerous places constructed water pipes intersecting plaintiff's tracks, roadbed and right of way in said streets, as

shown in the attached schedule, and in so doing has torn up the roadbed and pavement, placed by plaintiff in its right of way in said streets, all of which were theretofore in good repair and condition, and has also dug trenches along said street car tracks, placing therein water pipes; that although the city has refilled the portion of the trenches lying *outside* of plaintiff's right of way, and has restored the pavement over the same, yet the city, in violation of sections 2, 13, and 14 of article 2 of the Illinois Constitution and the 14th amendment of the U. S. Constitution "negligently and wilfully refrained from filling up the portion. of the trenches *within* the right of way of plaintiff, and likewise neglected to restore the concrete and other foundations of the plaintiff, together with the pavement thereon, all of which it was the duty of the City to restore, thereby leaving the said portions of each of said streets within plaintiff's right of way * * * in a dangerous condition"; that by reason thereof plaintiff, in order to protect the safety of those having occasion to travel along said several streets, and in order to protect itself from damages and to protect its own property, expended large sums of money, to wit, $15,611.02 in restoring said foundations and pavements, as shown in the schedule attached; that by reason of the premises it became the city's duty to replace said several roadbeds and pavements, or, failing so to do, to pay to plaintiff the amounts expended by it in so replacing the same; yet the city has wholly failed to pay to plaintiff said amounts, to its damage, etc.

The second count is substantially the same as the first, except that it declares on items of expenditures made by it in refilling and repaving openings in the several streets in connection with the installation and repair of sewer pipes, which work was done in its governmental capacity. The amount of damages claimed in this count is $4,982.53.

After the present transcript was filed in this Ap-

pellate Court, plaintiff moved that the appeal be dismissed and the cause transferred to the Supreme Court on the grounds that the construction of sections 2, 13 and 14 of article 2 of the Illinois Constitution and of the 14th amendment of the Federal Constitution was involved. The motion was reserved to the hearing, and it will now be denied. Under the allegations of plaintiff's last amended declaration we do not think that the construction of said sections of the constitutions is involved. (*City of Dawson v. Columbia Ave. etc., Trust Co.*, 197 U. S. 178, 181; *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U. S. 462, 471; *McCormick v. Oklahoma City*, 236 U. S. 657, 660.) The declaration discloses that plaintiff is seeking to recover damages for the alleged breach of a constructive or implied contract, and the sole question on this appeal is, as it seems to us, whether the trial court, in overruling the city's demurrer and entering the judgment in plaintiff's favor, correctly construed certain provisions of the city ordinances of 1907 and 1913.

Plaintiff does not allege that the particular portions of the pavements in the various streets were wrongfully removed. Its position is that under the ordinances it is not required to replace or repair at its expense pavements in its right of way which are removed by the city, in order that certain water and sewer pipes connecting with the main pipes of its water and sewer systems may be installed or repaired for the benefit of customers or users whose houses front on the several streets, and that when it paid the expenses of the replacements or repairs in question it did so on the city's behalf, rendering the city liable to it for said expenses on the theory of an implied contract. The city's position on the contrary is that the ordinance definitely and positively makes it the duty of the plaintiff company to make *all* replacements or repairs of pavements in the right of way, including those made necessary solely by acts of the city in installing or repairing water or sewer pipes. In sec-

tion 15 of the ordinance of 1907 it is provided that the plaintiff company *"shall, at its own expense,* fill, grade, *pave and keep in repair"* the portions of the streets occupied by it, as more specifically provided in a certain attached exhibit. And in the exhibit it is provided that the Company, upon order of the Commissioner of Public Works and approval of the Board of Supervising Engineers, *"shall pave, repave or repair"* the portions of the streets and public ways which by this grant it is required to keep paved and in repair, *"whenever and as often as the same shall reasonably require paving, repaving or repairing,"* etc. The language used in the section of the ordinance and in the exhibit is clear and unambiguous, and we find no limitations in either relating to the cause or condition necessitating the repaving or repairing. And in our opinion the provisions are not unreasonable. And a city, having the exclusive authority to grant or refuse permission to a railway company to lay tracks upon or across streets within the city limits, in granting such permission may impose such reasonable limitations and restrictions as it sees fit (*Chicago Terminal Transfer R. Co. v. City of Chicago,* 220 Ill. 310); such as, by ordinance, requiring the company to fill, grade, pave and otherwise improve the portion of the street occupied by its tracks and between them. (*West Chicago St. Ry. Co. v. City of Chicago,* 178 Ill. 339.) Plaintiff's declaration attempted to make a distinction between those items of expense claimed to have been incurred in the replacement or repair of pavements removed or damaged by the city to facilitate the installation or repair of water pipes and that of sewer pipes,—in the one case claiming that the city acted in its private or corporate capacity and in the other in its governmental capacity. The action being in assumpsit wherein plaintiff seeks damages for the alleged breach of a constructive or implied contract, we do not think the attempted distinction has any bearing on the city's liability or nonliability. Nor

do we think that the city's claimed liability is in anywise affected by the fact, as alleged, that the replacements and repairs were made by plaintiff without any order given by the Commissioner of Public Works and without the approval of the Board of Supervising Engineers. It appears from the allegations that the replacements and repairs were made voluntarily by plaintiff, and to protect its property and itself from possible damage suits. On the main question involved the case of *City of New York v. Whitridge*, 227 N. Y. 180, decided in October, 1919, is in point. The Court of Appeals in that case reversed judgments rendered against the city by the trial court (177 N. Y. Supp. 122) and by the appellate division thereof (173 N. Y. Supp. 903.) From the opinion of the trial court the following facts appear: The defendant receiver operated a street railway line on a certain street under which the city maintained a sewer. Portions of the sewer collapsed and were in urgent need of alteration and repair, and the city let a contract for the work. In order to properly do it, it was necessary to remove part of the pavement within the rails, and two feet in width outside thereof, of the railway line. Upon notice by the city to remove the pavement the receiver refused, and the city removed it. After the completion of the work the receiver was notified to restore the pavement within said area, but on his refusal the city made the restoration, and afterwards commenced the action to recover the expense of the removal and restoration of the pavement. The receiver demurred to the complaint and the trial court sustained the demurrer and entered judgment against the city for costs, which action subsequently was sustained by the appellate division. The city appealed to the Court of Appeals, where the orders were reversed, and the demurrer was ordered overruled with leave to the receiver to answer. It is said in the opinion of the Court of Appeals (p. 182):

"The only question argued on this appeal is whether

the city, after having removed a street pavement in order to make a sewer improvement, may under the provisions of section 178 of the Railroad Law (Cons. Laws, ch. 49) require the defendant street railroad to restore the pavement between its tracks and for a space of two feet outside thereof. The language of the statute is broad:

" 'Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street   *   *   *   shall have and keep in permanent repair that portion of such street *   *   *   between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs after the expiration of 20 days' notice to do so, the local authorities may make the same at the expense of such corporation,   *   *   *.'

"It has been held repeatedly that the local authorities are vested with the power to determine when and how the repairs should be made at the expense of the street railroad corporation, even to the extent of requiring a new pavement to be laid.   *   *   *   'The duty of keeping such portion of the streets in permanent repair (by the railroad company)   *   *   *   is commanded.' (*Conway v. City of Rochester*, 157 N. Y. 33, 38.) It is a duty imposed for the pecuniary benefit of the municipality. No exemption from any burden of repavement is suggested by the language of the statute as thus construed.

"The courts below have reached the conclusion that the statute should now be read with a proviso to the effect that the duty of repaving is limited to the restoration of pavements following surface improvements and that it has no application to the necessary restoration of the pavement following a sewer improvement. Much might be said on the policy of thus limiting the application of the statute, but the argument directs itself to the legislature rather than the court. *   *   *   The legislative intent is found in the legislative language which, as this court has had occasion

to say, unqualifiedly commands. The duty is not dependent upon conditions that the railroad creates, such as the interference with the surface of the highway due to the presence of the railroad tracks in the street.''

We think that the reasoning and holdings in this New York case are applicable to the present controversy. The New York statute is very similar to the provisions of the ordinances in question in the present case. Counsel for plaintiff contend in substance that the obligations imposed on the plaintiff company by the portions of the ordinances pleaded do not include the ''restoration'' of pavements. He attempts to draw a distinction between the words ''restore,'' and ''repair,'' but they are synonymous. (*State v. Gibson County Com'rs*, 80 Ind. 478,. 481.) The Century Dictionary defines the word ''repair'' as ''To restore to a sound, good or complete state after decay, injury, dilapidation, or partial destruction; restore; renovate.'' In *Callender v. Marsh*, 1 Pick. (Mass.) 418, 428, the word ''repair,'' as used in a statute in reference to certain highways being kept in repair, is defined to mean ''to replace or remake, *reficere*, to restore what has been impaired or injured.''

We are of the opinion, in view of the provisions of the ordinances of the City of Chicago of 1907 and 1913, made parts of plaintiff's last amended declaration, and the facts alleged, that said declaration failed to state a good cause of action against the city, and that the circuit court erred in overruling the city's demurrer thereto, and, after the city had elected to stand by its demurrer, in entering the judgment appealed from. Because of these holdings it is unnecessary for us to consider the second contention, above mentioned, of counsel for the city. Accordingly the judgment will be reversed and the cause remanded to the circuit court with directions to sustain the city's

demurrer to plaintiff's declaration and to dismiss plaintiff's action.

*Reversed and remanded with directions.*

FITCH, P. J., and BARNES, J., concur.