THE CHICAGO CITY RAILWAY COMPANY, Appellant, *vs.*
THE CITY OF CHICAGO, Appellee.

*Opinion filed October 28, 1926—Rehearing denied Dec. 8, 1926.*

1. MUNICIPAL CORPORATIONS—*when a street railway company must repair, at its own expense, street torn up by sewer construction.* A street railway company which accepts an ordinance requiring it to fill, grade, pave and keep in repair that portion of the streets occupied by it is bound to make such repairs in restoring sub-surface as well as surface construction; and it is not entitled to reimbursement though the repairs are made necessary by acts of the city in constructing and repairing water mains and sewers, there being no provision in the ordinance making an exception in such case.

2. SAME—*public grants are construed most strongly against the grantee.* The language of public grants should be certain and definite and will be strictly construed against the grantee so as to confine the terms of the grant strictly within the limits of the language used, and no presumption will be indulged to extend the grant beyond the words used.

APPEAL, from the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding.

John R. Guilliams, and Church, Haft & Robertson, (Charles M. Haft, of counsel,) for appellant.

Francis X. Busch, Corporation Counsel, and James J. Coughlin, (C. Morton Doty, William J. Tuohy, and James I. McCarthy, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The controlling question in this appeal is, Does the ordinance of the city of Chicago of 1907 authorizing the appellant, the Chicago City Railway Company, to construct, maintain and operate a system of street railways in the streets of the city of Chicago impose upon the company the duty of repairing such parts of the street pavements within the portions of the streets occupied by it as have been destroyed in the installation or repair of water pipes and sewer pipes in connection with the water and sewer systems of the city? The city has at various times, in connection with its water and sewer systems, laid water pipes and sewer pipes in many places, intersecting the tracks and road-bed of the company, and in so doing has torn up the road-bed and pavement, including the concrete and other foundations placed by the company in the streets occupied by it, and has filled up the trenches and restored the pavement outside of the parts of the streets occupied by the company but has failed to do so within such parts of the streets, and the company has expended large sums of money in filling up the trenches and restoring the concrete and other foundations and the pavements so removed and not restored by the city. To recover the sums so paid the company brought an action of assumpsit against the city in the circuit court of Cook county, which overruled a demurrer to the declaration, and, the city electing to stand by its demurrer, rendered a judgment against it for $14,676.46. The Appellate Court reversed the judgment and remanded the cause to the circuit court, with directions to sustain the demurrer and dismiss the action, and the company has appealed.

By section 1 of an ordinance of the city of February 11, 1907, the city granted to the appellant, in consideration of its acceptance of the ordinance, subject to all of the provisions, conditions, requirements and limitations of it, consent, permission and authority to construct, reconstruct, maintain and operate a system of railways in certain streets of the city. This ordinance was accepted by the appellant on April 15, 1907, and it is the contention of the appellee that by its terms the company expressly bound itself to make the repairs for which this action was brought. This claim is based upon section 15 of the ordinance and "Exhibit B," which is a part of the ordinance, and these, so far as material here, are as follows:

"Sec. 15. The company shall at its own expense fill, grade, pave and keep in repair that portion of the streets occupied by it, as more specifically provided for in said 'Exhibit B.' "

"Exhibit B" provides, in part, as follows:

"*Maintenance of streets*—The company, as respects filling, grading, paving, keeping in repair, sweeping, sprinkling, keeping clean or otherwise improving the streets or parts of streets occupied by its railway, shall fill, grade, pave, keep in repair, sweep, sprinkle and keep clean and free from snow eight (8) feet in width of all streets and public ways, or portions thereof, occupied by it with a single-track railway, and sixteen (16) feet in width of all streets and public ways, or portions thereof, occupied by it with a double-track railway.

"In removing snow the company shall not deposit it upon the portions of the street or public way outside of the tracks, except temporarily, and in every case of such temporary deposit it shall be removed within a reasonable time, to be fixed by the commissioner of public works.

"*Pavement*—The company, upon the order of the commissioner of public works and approval of the board of supervising engineers, shall pave, re-pave or repair the por-

tions of the streets and public ways which by this grant it is required to keep paved and in repair, whenever and as often as the same shall reasonably require paving, re-paving or repairing, and shall at all times keep the surface of all of its paving at least up to the top of the rail.

"The pavement which the company shall be required to lay down and keep in repair in the portion of any street or way which it is required herein to pave and keep in repair shall be of the following kinds, to-wit:

"*First*—In all streets or ways in which the company has in place at the date of the passage of this ordinance a good serviceable pavement, it shall repair and maintain the same, while serviceable, under the direction of the commissioner of public works as aforesaid.

"*Second*—Whenever any existing pavement of the company in any paved street or way can no longer be made serviceable by repair; and whenever the portions of any street or public way outside of the strip herein required to be paved by the company are newly paved or re-paved with asphalt, granite, brick, creosoted block or other similar material as aforesaid, and the pavement of the company therein does not comply with the following specifications; and whenever the company re-lays its rails in any such paved street or public way in which its pavement does not comply with the following specifications, then and in any of such events the company shall pave or re-pave the portion of any such street or public way which it is herein required to keep paved, with granite paving blocks having a uniform grain and texture, without lamination or stratification and free from an excess of mica or feldspar.   [This paragraph continues with detailed specifications of the manner of constructing the pavement.]

"*Third*—Whenever any existing pavement of the company in any unpaved street or public way can no longer be made serviceable by repairs and whenever the company lays down any track or tracks in any unpaved street or public

way, then and in either of such events the company shall pave or re-pave the portions of any such street or public way which it is required to keep paved or re-paved as aforesaid, with good, serviceable granite blocks.

"*Fourth*—In each case where by said 'Exhibit A' attached to this ordinance the company is authorized and required to change a single track to a double track in any street or part of a street, if the roadway therein be not at least thirty-eight (38) feet in width, the company shall at its own cost (such cost to be charged to capital account) widen said roadway to said width and shall re-build the catch-basins and their connections and curb and pave said street as may be required by the city council: *Provided,* that the company shall not hereby be required to pave, in addition to the part of the street occupied by its double-track street railway, as provided for in this ordinance, more than eight (8) feet in width of such roadway nor to acquire private property in order to secure the necessary width for such roadway." * * *

It is the contention of the appellant that under a proper construction of the ordinance the duty is not imposed upon it of restoring the pavement which the city has removed from the parts of the street occupied by the street railway tracks in the process of laying water mains or sewer pipes across such tracks. The city had the exclusive authority to grant permission for the construction, maintenance and operation of street railways in the streets of the city and in doing so could impose such terms as it saw fit. By its acceptance of the ordinance the appellant became bound by its terms. (*Chicago Terminal Railroad Co.* v. *City of Chicago,* 220 Ill. 310; *Byrne* v. *Chicago General Railway Co.* 169 id. 75; *West Chicago Street Railroad Co.* v. *City of Chicago,* 178 id. 339; *People* v. *Suburban Railroad Co.* 178 id. 594.) The language of section 15 required the company, at its own expense, to fill, grade, pave and keep in repair that portion of the streets occupied by it, and the

duty was unlimited except by the expression, "as more specifically provided for in said 'Exhibit B.' " "Exhibit B" made no such exception as the appellant claims in case the repairs were made necessary by the acts of the city.

It is a legitimate use of the streets to lay sewers and water pipes in them. The city is expressly authorized to regulate openings in them for the laying of water mains and pipes and the building and repairing of sewers, tunnels and drains. It is a common occurrence for the pavement to be disturbed for the making of connections with sewers and water mains, and both the city and the street railway company knew at the time the ordinance was adopted and accepted that the acts complained of in this declaration would be necessary, that the pavements on different streets would be removed at various times in the parts of the streets occupied by the railroad company for the purpose of making water and sewer connections. The result would be that it would be necessary to repair the pavement, and so far as repairs were required in that portion of the streets occupied by the company it agreed by section 15 to keep that portion of the streets in repair at its own expense. This is the natural construction of the language of the section. "Exhibit B" provides that the company, as respects filling, grading, paving, keeping in repair, sweeping, sprinkling, keeping clean or otherwise improving the streets or parts of streets occupied by its railroad, shall fill, grade, pave, keep in repair, sweep, sprinkle and keep clean and free from snow eight feet in width of all streets occupied by it with a single-track railway and sixteen feet in width of all streets occupied by it with a double-track railway. The company, upon order of the commissioner of public works and approval of the board of supervising engineers, is required to pave, re-pave or repair the portion of the streets which it is required to keep in repair, so often as the same shall reasonably require paving, re-paving or repairing. There is no exception from this obligation of repairs

made necessary by the removal of a pavement by the city in the process of laying water or sewer pipes across the railroad track. The effect of the provisions of the ordinance contained in section 15 and "Exhibit B" was to make the street railway company liable, so far as the spaces of eight and sixteen feet, respectively, occupied by it were concerned, for the maintenance, repair and care of the street to the full extent to which the city was bound, and to relieve the city from all expense arising out of the filling, grading, paving, keeping in repair, sweeping, sprinkling and keeping clean that part of the streets. When the street became out of repair for any reason the duty of the city to repair it was imposed by this ordinance upon the company so far as the part occupied by it was concerned. As far as the public was concerned the city was under obligation to use reasonable care to keep all the streets in a safe condition, including that part which the company contracted to keep in repair, but as between the city and the company the duty devolved on the company of keeping in repair at its own expense the parts of the streets occupied by it of the width of eight feet or sixteen feet, according as the streets were occupied by a single track or double tracks, and in making the repairs it acquired no claim against the city for reimbursement.

Since the company is without right to occupy the streets without the consent of the city and the city may impose such terms as it sees fit as a condition precedent to such occupation, the acceptance of the ordinance creates a contract whose terms are binding upon both parties, except where they are contrary to law or opposed to public policy. If by the terms prescribed in the ordinance the company is required to make the repairs mentioned in its declaration, it has no cause of action for the sums expended in doing so. The question, therefore, is simply one of construction of the contract. The rule of construction of public grants is that they are to be construed most strongly

against the grantee. (*Blocki* v. *People,* 220 Ill. 444; *West Chicago Street Railroad Co.* v. *City of Chicago, supra.*) The language of such grants should be certain and definite and will be strictly construed against the grantee so as to confine the terms of the grant strictly within the limits of the language used, and no presumption will be indulged to extend the grant beyond the words used. (*Blair* v. *Chicago,* 201 U. S. 400; *Cleveland Electric Railway Co.* v. *Cleveland,* 204 id. 116.) The duty of the company, at its own expense, to keep in repair the portion of the streets occupied by it is unequivocally declared by section 15 and cannot be regarded as subject to any exception which is not declared in terms equally unequivocal. Further provisions of "Exhibit B" contained no exception, but required the company, upon the order of the commissioner of public works and the approval of the board of supervising engineers, to pave, re-pave or repair the portions of the streets which it is required by the ordinance to keep paved and in repair, "whenever and as often as the same shall reasonably require paving, re-paving or repairing." The kinds of pavement which the company should be required to lay down and keep in repair are: First, in all streets in which the company has had in place at the date of the passage of the ordinance a good, serviceable pavement, it shall repair and maintain the same, while serviceable, under the direction of the commissioner of public works; second, whenever any existing pavement of the company in any paved street can no longer be made serviceable by repair, and whenever the portions of any street outside of the strip required to be paved by the company are newly paved or re-paved with asphalt, granite, brick, creosoted block or other similar material, and the pavement of the company does not comply with the specifications mentioned in "Exhibit B," and whenever the company re-lays its rails in any paved street in which its pavement does not comply with such specifications, then the company is required to

pave or re-pave the portion of any such street which it is required by the ordinance to keep paved, with granite paving blocks in the manner described in the detailed specifications contained in this paragraph of "Exhibit B;" third, whenever any existing pavement of the company in any unpaved street can no longer be made serviceable by repairs and whenever the company lays down any track in an unpaved street, then the company shall pave or re-pave the portion of the street which it is required to keep paved or re-paved, with good, serviceable granite blocks. The fourth paragraph relates to cases in which the company is required to change its track and in connection with such change widen the street. In all this there is no exception from the general duty to keep in repair imposed on the company and no exemption from the obligation because the necessity for repair arose from the lawful act of the city in the performance of its public duty in laying water pipes or sewer pipes across the company's tracks.

The appellant contends that by the ordinance it was granted substantial rights in the streets which are equivalent, in effect, to a fee simple title, and that by sections 2, 13 and 14 of article 2 of the State constitution and amendment 14 of the Federal constitution it is protected against deprivation of such rights without due process of law, against the damaging of them for public use without just compensation, and against the impairment of the obligation of the contract contained in the ordinance. It is true that the ordinance constitutes a contract, the obligation of which cannot be impaired; that the rights conferred by it are property in the nature of real estate, of which the appellant cannot be deprived without due process of law and which cannot be destroyed, abridged or damaged for the public use without just compensation. But these propositions raise no constitutional questions. The rights in question are granted subject to all the provisions of the ordinance, and if the acts of the city which are complained of

have been in accordance with the terms of the ordinance the city has incurred no liability by doing them.

Counsel for the appellant contend that the city not only removed the pavement but also the street railway foundations, and that the city could not, by the terms of the ordinance, remove these street railway foundations and compel the company to restore them at its own expense. "Exhibit B" contains the following provisions in regard to track construction:

*"Permits*—The company, before it makes any excavation in or in any way interferes with the surface of any street or public way for the purpose of doing any work, shall obtain from the commissioner of public works of the city a permit so to do, which permit shall contain a condition requiring the company to restore said street or way and maintain it for one year thereafter; and in every case the company, after it has restored such street or way, shall maintain it for one year after such restoration. * * *

*"Tracks*—The tracks to be maintained by the company shall not be elevated above the surface of the street or public way in which they are placed. They shall be laid and maintained by the company so as to conform to the grade of such street or public way as the same is, or from time to time hereafter shall be, established by the city council. All new tracks shall be laid with the best materials and in the most approved modern manner. * * *

*"Track substructure*—The rails shall be laid upon concrete beams, wooden ties, steel ties or cast-iron chairs, or in some other form of first-class modern approved street railway track construction. The foundation shall be either of concrete, crushed stone or other ballast material which in the judgment of the board of supervising engineers shall best suit the conditions of soil and drainage. Said foundation to be brought to the proper height to serve as a suitable foundation for the pavement." * * *

The railroad track upon its construction became a part of the street, its foundations became a part of the foundation of the pavement, and were required by the ordinance to be of such material as in the judgment of the board of supervising engineers should best suit the conditions of soil and drainage and to be brought to the proper height to serve as a suitable foundation for the pavement. Even if it could have done so, the city did not by the ordinance surrender its right to the control of the streets any further than was necessary to the exclusive use by the company, in the manner specified in the ordinance and subject to all its terms, of the portions of the streets which it was authorized to occupy for the purpose of constructing, maintaining and operating a system of street railways. The grant was subject to the right of the city, in the exercise of its police power, for the public benefit to lay water pipes and sewer pipes in the street intersecting the railway, in doing which it was in contemplation that the pavement, including the railway foundations, which were a part of it, would necessarily be broken and damaged. The right of the company to maintain the track in the street is property, and the company is entitled to the protection of the constitutional guaranties against its appropriation or damage for the public use without compensation. It was competent for it to consent to the qualification of its right by agreeing to repair, at its own expense, the damage done by the laying of water or sewer pipes in the street intersecting the track. This it did by accepting the ordinance, which by its terms, we have held, imposed upon the company that duty. The contract was absolute and required the company to do everything that was necessary to keep the pavement in repair.

In *City of New York* v. *Whitridge,* 227 N. Y. 180, the question was presented to the Court of Appeals whether the city, after having removed a street pavement in order to make a sewer improvement, could require a street railway company to restore the pavement between its tracks and for

a space of two feet outside thereof, under a statute which provided that "every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe.   In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days' notice to do so, the local authorities may make the same at the expense of such corporation." In reversing the judgments of the trial court and of the appellate division the Court of Appeals said:   "The courts below have reached the conclusion that the statute should now be read with a proviso, to the effect that the duty of repaving is limited to the restoration of pavements following surface improvements, and that it has no application to the necessary restoration of the pavement following a sewer improvement.   Much might be said on the policy of thus limiting the application of the statute, but the argument directs itself to the legislature rather than the court.   The distinction drawn between surface improvements and subsurface improvements rests not on the language of the statute but on the theory that 'the legislature could not have intended that the statute should cover any case where the repairs are made necessary by the direct, even though lawful, interference of the city with the street surface.' The legislative intent is found in the legislative language, which, as this court has had occasion to say, unqualifiedly commands."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*