# Northern Coal & Iron Company *v.* Wilkes-Barre, Appellant.

218   269
225   150
226   502

*Railroads—Branches—Occupation of roads and streets—Township—City.*

A railroad incorporated in Pennsylvania in 1859, with the right to construct lateral branches, not exceeding three miles in length from either terminus, or from any point on the line of its main road, has the right to cross the roads of the township in which it is located in constructing branches, and also the right to cross streets in a city formed out of a portion of the township, and in the exercise of such right it may cross streets without the city's consent, and without submitting plans of construction to the municipal authorities for approval.

Argued April 17, 1907.    Appeal, No. 156, Jan. T., 1907, by defendant, from decree of C. P. Luzerne Co., Oct. T., 1906, No. 1, on bill in equity in case of Northern Coal & Iron Company v. City of Wilkes-Barre.    Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.    Affirmed.

Bill in equity for an injunction.    Before FERRIS, J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*S. J. Strauss,* with him *C. F. McHugh,* for appellant.—A railroad company, acting under the provisions of the general railroad act of 1849, may not enter upon the streets of a city, either longitudinally or transversely, and build its road without submitting the plans of construction to the city authorities and obtaining, if possible, the approval of the city authorities before actually entering upon the work of construction : Pittsburg v. R. R. Co., 205 Pa. 13 ; Millvale Boro. v. Ry. Co., 131 Pa. 1 ; Pittsburg v. Pennsylvania R. R. Co., 48 Pa. 355 ; P. & R. R. R. Co. v. Kensington, etc., R. R. Co., 33 W. N. C. 182 ; Philadelphia v. River Front R. R. Co., 173 Pa. 334.

*George R. Bedford,* with him *A. H. McClintock, Welles & Torrey* and *Simon P. Wolverton,* for appellee.—The right to

build branches has been broadly construed by the courts, and can be exercised when and where, at the discretion of the directors of the railroad possessed of such a franchise: Com. v. Erie & Wyoming Valley R. R. Co., 3 Dauphin Co. Rep. 189.

The company has the right to cross the streets in question without the permission of the city: Jones v. R. R. Co., 151 Pa. 30; Millvale Borough v. Evergreen Ry. Co., 131 Pa. 1; O'Connor v. Pittsburg, 18 Pa. 187; Philadelphia & Trenton R. R. Co., 6 Wharton, 25; Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 325.

OPINION BY MR. JUSTICE BROWN, May 13, 1907:

No material fact in this case is in dispute. The Northern Coal and Iron Company was incorporated by Act of April 27, 1864, P. L. 627. In 1873 it was consolidated with the Plymouth and Wilkes-Barre Railroad and Bridge Company. The new company retained the name of " Northern Coal and Iron Company " and acquired all the property, rights, franchises and privileges of the Plymouth and Wilkes-Barre Railroad and Bridge Company, which was incorporated by Act of April 12, 1859, P. L. (1860) 857. By its act of incorporation and a supplementary Act approved March 14, 1865, P. L. 444, it was invested with all the rights and privileges and subjected to all the restrictions of the general railroad Act of February 19, 1849, P. L. 79, except those contained in the 18th section of said act. It was authorized to construct a railroad from the Susquehanna and Lehigh Railroad and operate the same as a public highway for the transportation of passengers or freight from a point at or near the intersection of the Susquehanna and Lehigh Railroad and the North Branch canal in Wilkes-Barre or Hanover township, Luzerne county, to a point in Plymouth township on the Lackawanna and Bloomsburg Railroad at or near the " Boston " coal breaker; to build a railroad bridge across the Susquehanna river; to connect its railroad with any other railroads then built or thereafter to be constructed, and to build lateral branches, not exceeding three miles in length, from either terminus, or from any point on the line of its main road. The railroad and bridge which it was authorized to build were constructed prior to May 4, 1871, the date of the incorporation of the city of Wilkes-Barre, which

is now under the general laws of the commonwealth relating to
cities of the third class.    The appellee claiming to be acting
in pursuance of the authority given by the act of April 12, 1859,
and such other laws of the commonwealth as are applicable,
has located a branch road less than three miles in length, having
acquired the right of way therefor, leading from a point in the
city of Wilkes-Barre on the main line of the former Plymouth
and Wilkes-Barre Railroad, between the old river road and
the Susquehanna river, to a point in Hanover township,
where it intends to connect with the Pennsylvania railroad for
interchange of traffic.    This proposed branch line intersects
certain streets laid out in that section of the city of Wilkes-
Barre, known as Firwood, which, at the time of the incorpora-
tion of the Plymouth and Wilkes-Barre Railroad and Bridge
Company and the construction of its main line, formed a part
of the township of Wilkes-Barre.    The streets were laid out
long after the incorporation of the railroad and bridge com-
pany and the construction of its main line, and long after the
branching rights had vested in that company by its charter
and in the appellee by the merger.    Some of the streets inter-
sected by the appellee's branch had been accepted by the city
before the location of said branch; another, since; and still
another has not yet been accepted; but they have all been
laid out and dedicated to public use, and, for the purpose of
determining the question raised on this appeal, are to be treated
as public highways, subject to municipal control.    The ex-
pressed intention of the appellee is that no part of any of these
streets shall be permanently occupied by its proposed branch
road, but all will be crossed overhead by elevated structures
with clearances of not less than fourteen feet above the streets,
so constructed that street travel will not be in any manner
obstructed or interfered with.    The eighth finding of fact is
that it was not shown by the evidence that this clearance of
fourteen feet is unreasonable or insufficient to accommodate
street traffic at the points in question.    The appellee, having
entered upon the work of building its branch railroad, was
prevented by officials and employees of the city from con-
structing the same over the streets, and this bill was filed to
restrain such interference.

The appellant does not seem to question the right of the ap-

pellee to cross streets in the construction of its branch, but raises the question of its right to do so, unless it first submits to councils a plan of the proposed branch and municipal approval of the same is unreasonably withheld. This cannot be regarded as the real question before us. The appellee submitted an application to councils for permission to cross the streets, but, after unfavorable action had been taken upon it by the street committee, withdrew it, with formal notification that the charter rights of the company authorized the crossing of the streets without municipal consent; and this is the position now assumed by the company. The question to be determined, then, is not whether the city may unreasonably withhold consent, but whether the appellee must obtain the same before it can construct its branch. In sustaining its contention that it is not required to first obtain municipal consent the court below very properly said : " The right of the municipality in the exercise of its police power and for the protection of its citizens and the general public, to reasonably control the operation of railroads within the city limits, is not herein involved. Nor are we called upon to consider any question as to obstruction of street travel by the proposed viaducts over the streets, for, under the evidence, no such obstruction is intended ; nor whether the proposed acts of the plaintiff would be a violation of sec. 12, of the Act of April 4, 1868, forbidding an entry upon, or occupation of, streets of a city without its consent by railroad corporations formed under that act, for neither the Plymouth and Wilkes-Barre Railroad and Bridge Company nor the Northern Coal and Iron Company was, or is, a corporation formed under that act. As to all matters relating to the reciprocal rights and duties of the railroad and the city, and those sections of the general public whose interests they respectively serve, it must be assumed for the purposes of this proceeding that the railroad is intended to be built with a due regard for the rights of travelers over the streets, and that when constructed it will be operated in conformity with law, and with any existing or future regulations which the municipality may lawfully impose."

By the act of 1859, incorporating the Plymouth and Wilkes-Barre Railroad and Bridge Company, the right is given to con-

struct lateral branches, not exceeding three miles in length, from either terminus or from any point on the line of its main road.   The right is not to build a single branch, but as many as the company, in the judgment of its officers, may need from time to time, and it is, therefore, a continuing right to be exercised at any time :  Pittsburg, Virginia & Charleston Ry. Co. v. Pittsburg, C. & State Line R. R. Co., 159 Pa. 331.

If, at the time the Plymouth and Wilkes-Barre Railroad and Bridge Company was incorporated, it had been authorized to construct its main line through the city of Wilkes-Barre, with a right to extend branches from the same at any point, such a right would have carried with it the right to cross streets in constructing a branch, for without such a right the right to construct a branch could not have been exercised.   It would, therefore, have. been inferentially conferred by the legislature, but would have been as valid as an express grant.   " The right of a company, therefore, to build a railroad on the street of a city depends, like the lawfulness of all its other acts, upon the terms of its charter.   Of course, when the power is given in express words, there can be no dispute about it.   It may also be given by implication ; for instance, if a company be authorized to make a railroad, by a straight line, between two designated points, this implies the right to run upon, along or across all the streets or roads which lie in the course of such line : " Commonwealth v. Erie & North-East Railroad Co., 27 Pa. 339. " It does not admit of a doubt, in this state, that a railroad company may use a public.street or highway when authorized by its charter expressly or inferentially : " Cleveland & Pittsburg Railroad Co. v. Speer, 56 Pa. 325.   " The Act of the 19th February, 1849, P. L. 83, entitled ' An act regulating railroad companies,' contains no express authority for crossing the tracks of another company.   It gives a general authority to lay out and construct a railroad between designated termini. It follows that the right to cross, when absolutely necessary, follows by necessary implication, otherwise the grant, in some instances, would entirely fail, as, for instance, where another railroad lies between its termini.   In such case, if it could not cross, it could not build its road : " PAXSON, C. J., in Perry County R. R. Extension Co. v. R. R. Co., 150 Pa. 193.

When the main line of the Plymouth and Wilkes-Barre Rail-

road and Bridge Company was constructed the city of Wilkes-Barre did not exist, and that portion of it through which this branch will be constructed was part of the township of Wilkes-Barre, through which the company was expressly authorized to construct its main line, and through which its branches, not exceeding three miles in length, could have been extended in every direction, and, when so extended, public roads would necessarily have been crossed by them. This unquestionable right to construct branches vested in the company years before the incorporation of the city of Wilkes-Barre, and could not have been taken away by the mere incorporation of the city and its absorption of the territory over which the right existed by clear legislative grant. The right over such territory, in the absence of any lawful impairment of it by the legislature, continued after the absorption of the territory by the city to be just what it had been before. The city took in the township just as she found it, and with whatever burdens were resting upon it. Where the appellee had a right to extend its tracks before the city of Wilkes-Barre came into existence, it has the right to extend them now, for the legislature which gave it that right has not taken the same away nor in any manner impaired it.

Though the streets of the appellant may, without its consent, be crossed by the tracks of the appellee in constructing its branch, it would have been better if plans for the construction of the same had been first submitted to the municipal authorities and approved by them, for by such a course, though the appellee was not bound to take it, the present controversy might have been avoided. Disputes may hereafter arise between the appellant and the appellee growing out of alleged abuse by the latter of the corporate right which it is now exercising. If the same should ever be abused, courts will restrain the abuse. At present no such abuse appears.

The injunction awarded by the court below is not in disregard of any of the rights of the public. The decree is that the appellant be restrained from interfering with the appellee in the erection of suitable elevated structures with clearance of not less than fourteen feet above the streets, and from interfering with such temporary use of the same as may be necessary in building such crossings, and as will not prevent the

use of the streets by the traveling public; and the appellee is directed to so prosecute the work as not to permanently obstruct or unnecessarily impede safe public travel along the streets, and so as to leave them in as good condition as when the work was begun.

The appeal is dismissed and the decree below affirmed at appellant's costs.