# CITY OF INTERNATIONAL FALLS v. MINNESOTA, DAKOTA & WESTERN RAILWAY COMPANY.[1]

January 26, 1912.

Nos. 17,410—(188).

**Railway — right to cross highways and streets.**

The legislature has power to grant authority to a railroad company to cross public highways and streets, and authority to construct a railroad between designated points implies authority to cross highways and streets which the railroad intersects. The legislature may require that a franchise be obtained from a city or village before a railroad company is permitted to cross streets in such city or village; but, in the absence of such requirement, a franchise from the city or its consent is not necessary.

**Same — section 2841, R. L. 1905—franchise from city.**

R. L. 1905, § 2841, construed, and *held,* following Minneapolis & St. Paul Suburban Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, not to require a franchise to be obtained from a city or village before a railroad company constructs its tracks across streets in such city or village.

**Same — section 2916.**

R. L. 1905, § 2916, construed, and *held* not to require such a franchise, or that there be an agreement between the city or village and the railway company as to the manner, terms, and conditions upon which a street may be crossed by the railroad.

**Same — right to enjoin crossing before condemnation proceedings.**

Conceding that under section 2916 a railroad company may and must acquire the right to cross a street in a city or village by condemnation proceedings, equity will not enjoin such crossing before such proceedings are begun; it appearing conclusively that the necessity exists, and that such city or village has at all times an absolute right to compel the railroad company to make the crossing safe for public use.

**City has no proprietary right in streets — eminent domain — compensation.**

A city or village has no proprietary rights in its streets. Whatever rights it has are held merely in trust for the public use. It is not entitled to compensation when a railway company crosses its streets, and the constitutional provision that private property shall not be taken for public use without just compensation first paid or secured does not apply.

[1]Reported in 134 N. W. 302.

Action in the district court for Koochiching county to restrain defendant from operating its lines of railway across Fourth street, in plaintiff city, and from constructing any further lines and from in any manner interfering with or obstructing any of the streets or alleys of the city. From an order, Stanton, J., denying plaintiff's motion for a temporary injunction and vacating the temporary restraining order, plaintiff appealed.    Affirmed.

*Kane & Palmer* and *Frank Palmer,* for appellant.

*C. J. Rockwood,* for respondent.

Bunn, J.

This is an appeal from an order of the district court for Koochiching county denying plaintiff's motion for an injunction pendente lite restraining defendant from building its tracks across any of the streets in the city of International Falls, and especially across Fourth street in said city. The facts, as they appear from the complaint and the affidavits considered on the hearing in the court below, are as follows:

Plaintiff is a municipal corporation under the laws of this state, and as such has the sole and exclusive control of all streets, highways, and alleys within the city. Fourth street is one of the duly indicated and laid-out highways and streets of the city, and furnishes the only outlet for travel between said city and the village of Rainier to the east thereof.

Defendant is a railroad corporation under the laws of this state, authorized to build, maintain, and operate as a common carrier, a line of railroad from a point of junction with the line of the Duluth, Rainy Lake & Winnipeg Railway in the county of Koochiching westerly to the city of International Falls, and to the international boundary in Rainy River; also a line of railroad from the city of International Falls southerly and westerly across the state to the west line thereof.

During the years 1909 and 1910 defendant constructed and has since operated its road into and through the city of International

Falls. Its main line crosses Fourth street with three tracks. It proposes to construct and operate four more tracks across said street, sixteen feet apart. It has obtained no authority or permission from the city to lay these proposed tracks or its other tracks across said street. The affidavit of defendant's president, which was not contradicted, showed that it was necessary to the transaction of its business for defendant to construct and operate these tracks.

The question before us is whether defendant was obliged to obtain the consent of the city before constructing its tracks across the city streets.

1. The legislature had the power to grant authority to the railroad company to cross public highways and streets, and authority to construct a railroad between designated points implies authority to cross highways and streets which the road may intersect. A franchise from the city or village, or its consent, is not a prerequisite to the crossing of streets or highways in such city or village, unless the legislature has so provided. The legislature has the power, however, to provide that such a franchise or consent must be obtained, and in such case the railroad company is obliged to procure such a franchise from the city or village, or its consent, as a prerequisite to constructing its tracks across streets or highways within the limits of such city, or village.

These propositions are well settled by the authorities, among which we refer to the following: 33 Cyc. 194; 2 Lewis, Eminent Domain, § 430 (3d Ed.); Canton v. Canton, 84 Miss. 268, 36 South. 266, 65 L. R. A. 561, 105 Am. St. 428; Thompson v. Ocean City, 60 N. J. L. 74, 36 Atl. 1087; Raritan v. Port Reading, 49 N. J. Eq. 11, 23 Atl. 127; Northern v. Wilkes Barre, 218 Pa. St. 269, 67 Atl. 352; Morgan v. Des Moines, 113 Iowa, 561, 85 N. W. 902; Elliott, Railroads, § 1099; Chicago v. City, 220 Ill. 310, 77 N. E. 204; People v. North Tonawanda, 70 Misc. 91, 126 N. Y. Supp. 186. There is a well-recognized distinction between the right to cross a street and the right to occupy it longitudinally, and in stating the

law as we have done we have reference solely to the crossing of streets and highways by railroad tracks.

2. The inquiry then is: Has the legislature provided that the consent of a city or village is necessary before its streets may be crossed by railroad tracks?

Section 2841, R. L. 1905, provides that no railway corporation "shall construct, maintain or operate a railway of any kind * * * in or upon any street, alley or public ground of a city or village, without first obtaining from, and compensating said city or village for a franchise conferring such right." It was decided in Minneapolis & St. Paul Suburban Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 112 N. W. 13, that to *cross* a street is not to construct a railroad *in or upon* such street, that the words "in or upon" refer to a longitudinal occupation, and that it was not necessary under this section to obtain from a city or village a franchise conferring the right to cross a street. This court said: "To hold that a franchise must be obtained as a prerequisite to crossing a highway, road, or street would put it in the power of the town, village, or city authorities throughout the state to practically block railroad extension. Such is not our view of the statute." We adhere to the decision in that case, and further consideration of section 2841, in this connection is unnecessary.

3. This brings us to the question whether R. L. § 2916, was intended to make the consent of a city or village a prerequisite to a railroad crossing its streets. This section is as follows:

"When in the location of any railroad, it becomes necessary to occupy any road, street, alley, or other public way, the municipal corporation or other public authority owning or having charge thereof and the railroad company may agree upon the manner, terms, and conditions in and upon which the same may be used or occupied, or such corporation may appropriate so much of the same as shall be necessary by condemnation proceedings under the right of eminent domain."

It is quite apparent that this section does not require a franchise from or the consent of a municipal corporation. It says that the

117 M.—2.

municipal corporation and the railroad company *may agree* upon the manner, terms, and conditions in and upon which the street may be used or occupied, or that the railroad company may appropriate so much of the same as shall be necessary by condemnation proceedings, under the right of eminent domain. It is clear, then, that plaintiff has no right to insist that the company obtain and pay for a franchise, or that there be an agreement between plaintiff and the company as to the "manner, terms, and conditions in and upon which the" street "may be used or occupied."

The right of the city is confined to a right to insist that defendant proceed by condemnation proceedings to appropriate so much of the street as shall be necessary for its purposes.

Whether the city has even this right is a doubtful question. If to cross a street is not to "occupy it," and the section was intended only to cover cases where in the location of a railroad it becomes necessary to run *along* a street, then clearly condemnation proceedings are not required by this statute, in so far as concerns the interest of the municipality in its streets. But in the Manitou Forest Syndicate case it was said that, when it is the purpose of a railway company to merely cross a street, the right of way may be condemned under section 2916.

In Duluth Terminal Ry. Co. v. City of Duluth, 113 Minn. 459, 130 N. W. 18, it was held that the provision in R. L. 1905, § 2841, hereinbefore considered, enacted as chapter 74, p. 189, Laws 1893, took away the right given by R. L. 1905, § 2916, to a railway company to acquire by condemnation proceedings the public easement to construct, maintain, or operate a railway along a street in such city or village, and that a franchise from the city or village was a prerequisite. The decision was expressly limited to the construction of a railway *along* a street, and it was not decided whether section 2916 was still in force as to acquiring the right to cross a street in a city or village by condemnation proceedings. As it was decided in the Manitou Forest Syndicate case that it was not necessary to procure a franchise from the city or village, it would seem to follow that the provisions of section 2916 in regard to condemnation pro-

ceedings are still in force, as applied to a crossing over a street in a city or village.    We will assume for the purposes of this case that this is correct, and also that the words "to occupy" include a mere crossing, as well as a longitudinal occupation, and therefore that it is necessary for defendant to "appropriate so much of the" street in question "as is necessary by condemnation proceedings under the right of eminent domain."

4. This brings us to the question whether, at the suit of a city, equity will enjoin a railroad company from constructing its tracks across a street in such city, when such company has power to and must acquire the right to so construct its tracks by condemnation proceedings.

Is there not an adequate remedy at law?    Is there any relief or advantage that would accrue to the city from an injunction that it could not obtain by an action to enforce its right after the acts sought to be enjoined are done?    The city's rights in condemnation proceedings would be very limited.    It could, perhaps, litigate the question of the necessity of the taking; but that it would be unsuccessful in any such defense is too clear to justify saying that this presents any substantial ground for an injunction.    Defendant has done the grading for the four additional tracks, and had actually laid the ties and rails to the line of Fourth street on both sides thereof.    The new and growing industries of the city require the tracks. It is inconceivable that a court would hold that they were not necessary, or that they could be constructed and used without crossing the street.    Nor would condemnation proceedings give the city or the public any advantages in the way of an opportunity to insist that the crossings be made safe.    The city has an absolute right to compel defendant to provide guards, gates, planking, bridges, and, in short, to do everything that goes to make a crossing safe for public use.

5. Any rights that the city has are clearly rights that would not be lost or affected by the actual appropriation of the easement before condemnation.

The city has no proprietary rights in its streets.    Whatever rights

it has it holds merely in trust for the public use. It is not entitled to compensation when a railway company acquires a right of way across its streets. Therefore, granting that the public easement in a street may be acquired by condemnation proceedings, the case does not fall within the constitutional provision that private property shall not be taken for public use without just compensation first paid or secured. Hence there is no basis for holding that equity will enjoin the taking until the compensation is paid or secured, both because the city is not entitled to compensation for the taking, and because the property is not private property. Abutting owners are not complaining. Presumably the company has acquired its right of way legally as to them.

All that the city is entitled to is that the tracks shall be so constructed and maintained as to make the crossing safe, and this right is amply secured by the common law as well as the statutes. It is impossible to hold that plaintiff has not an adequate remedy at law, and we conclude that the court below correctly denied a temporary injunction.

Order affirmed.