In the Matter of the Application for a CHANGE IN CORPORATE TITLE AND PLACE OF BUSINESS FILED BY FIRST STATE BANK OF DOVER, Dover, Minnesota, Olmsted County, as Applicant.

No. C2-85-567.

Court of Appeals of Minnesota.

Aug. 6, 1985.

Ronald E. Orchard, St. Paul, for relator First Nat. Bank in St. Charles.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Gregory P. Huwe, Sp. Asst. Atty.

Gen., St. Paul, for respondent Com'r, Dept. of Commerce.

Robert H. Preston, Minneapolis, for respondent First State Bank of Dover.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

First National Bank in St. Charles appeals from an order of the Commissioner of Commerce approving First State Bank of Dover's application to relocate its main office from Dover, Minnesota to St. Charles, Minnesota. First National contends the Commissioner did not apply the proper statute when making his determination. We affirm.

## FACTS

First State Bank of Dover applied to the Minnesota Department of Commerce to move its main banking office from Dover to St. Charles, which is approximately 3.7 miles from Dover. At the same time it applied for authority to establish a detached facility at its present office in Dover. When First National received notice that the applications had been filed, it sent a letter to the Commissioner opining that there was insufficient deposit growth in St. Charles to sustain two strong banks. It requested an administrative hearing.

After the hearing, the administrative law judge concluded (1) First State would be properly and safely managed; (2) there is a probable volume of business in St. Charles sufficient to insure and maintain the solvency of both banks without endangering the safety of First National; and (3) there is a reasonable public demand for the proposed relocation of First State. The administrative law judge recommended that the Commissioner approve First State's application to relocate its main office to St. Charles. The Commissioner adopted the recommendation. In a separate order issued on the same day, he approved First State's application to establish a detached facility at its present office in Dover. First National appeals the Commissioner's approval of the relocation.

## ISSUE

Does Minn.Stat. § 47.101 (1984) or Minn. Stat. § 47.52 (1984), the home office protection rule, govern the relocation of a main banking office?

## ANALYSIS

First National contends that the relocation of First State's main office to St. Charles, a city with a population of less than 10,000, is governed by Minn.Stat. § 47.52, the home office protection rule, rather than by Minn.Stat. § 47.101, the statute applied by the Commissioner.

Minn.Stat. § 47.101, subd. 3 provides that an application by a bank to relocate its main office outside a radius of three miles must be approved or disapproved by the Commissioner as provided by Minn.Stat. §§ 45.04 and 45.07. Minn.Stat. § 45.04, now renumbered as Minn.Stat. § 46.041 (1984), provides for the application process. Minn.Stat. § 45.07, now renumbered as Minn.Stat. § 46.044 (1984), provides the conditions which must be met in order for a charter to be issued. Thus, the criteria to be used to consider a relocation application are the same as those used to consider the establishment of a new bank. *See also West St. Paul State Bank v. Signal Hills State Bank*, 302 Minn. 124, 223 N.W.2d 793 (1974). However, several of the criteria may already have been established at the time of the original application for a bank charter. *In re the Application of Larson*, 350 N.W.2d 363 (Minn. 1984). In this case the Commissioner made findings relating to those criteria not already established at the time of First State's application. When the statutory criteria are met, the Commissioner is obligated to grant the application. Minn.Stat. § 46.044.

First National does not contend that the statutory criteria were not met. Rather it contends the Commissioner erred by not

applying Minn.Stat. § 47.52, the home office protection rule, which prohibits the establishment of a detached facility in a community of under 10,000 unless all banks with main offices in the community have provided their written consent. This statute gives main offices an absolute veto. If a bank withholds consent, there is no opportunity for a hearing or a review by the Commissioner. *Application of Larson*, 350 N.W.2d at 366. First National argues that since the 1980 amendments to the banking laws give detached facilities authority to perform all the banking services of a main office, there is no real distinction between a detached facility and a main office. It further argues that since the home office protection rule was meant to protect banks in communities with a population of 10,000 or less, its provisions must be applied to main office relocations as well as to the establishment of detached facilities. It, therefore, asks this court to apply the "intent" of the home office protection rule to main office relocations. We cannot do so.

■ Minn.Stat. § 47.101, subd. 3 specifically provides for the relocation of main banking offices by directing the Commissioner to apply Minn.Stat. §§ 46.041 and 46.044. These statutes do not include a home office protection rule. Minn.Stat. § 47.52 specifically applies to detached facilities. When the words of a law are clear and free from all ambiguity, the letter of the law may not be disregarded under a pretext of pursuing its spirit. Minn.Stat. § 645.16 (1984). The statutes in question are clear. We cannot ignore their plain language by applying the "intent" of one to another.

Our decision is mandated not only by the plain language of the statutes, but also by *Application of Larson.* In that case the supreme court recognized that there are three methods by which banks may enter new markets. It further recognized a relocation is governed by the criteria used to consider new bank charters while the establishment of a detached facility is governed by Minn.Stat. § 47.52. The court's

holding that Minnesota banking statutes do not prohibit approval of simultaneous relocation and detached facilities applications was predicated on the assumption that the home office protection rule does not apply to the relocation.

First National acknowledges that when applied to the establishment of a new bank, the requirements of Minn.Stat. § 46.044 amply protect the public and existing banks. Just as these requirements protect the public and existing banks when an application is made for a new bank, they protect the public and existing banks when an application is made for relocation.

### DECISION

Minn.Stat. § 47.101 governs the relocation of a main banking office. The Commissioner's decision is affirmed.

POPOVICH, Chief Judge, concurring specially.

I concur with the decision because it is mandated by the statutes as written.

As a practical matter, however, the statutes do not protect banks in communities of 10,000 or less as intended by the home office protection rule. This case is a perfect illustration.

Under the home office protection rule, a bank in a community of 10,000 or less could veto the establishment of a detached facility of another bank. The protection originally provided by the rule was lost when the statute was changed to give detached facilities authority to perform all the banking services of a main office. Now a bank can simultaneously apply for authority to relocate its main office from one town to another and for authority to retain its present facility as a branch bank, effectively circumventing the home office protection rule. If the legislature did not intend circumvention of the home office protection rule, it should address the problem illustrated by this case.