In the Matter of the RESOLUTION OF the CITY OF NORTHFIELD Requesting the Minnesota Department of Transportation to conduct a Public Hearing to Determine Whether a Public Grade Crossing Should be Established Where Dresden Avenue When Constructed Would Cross the Right of Way and Track of the Minneapolis, Northfield and Southern Railway, Inc. in Northfield, Minnesota.

No. C8–85–2288.

Court of Appeals of Minnesota.

May 6, 1986.

Review Denied July 16, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent Dept. of Transp.

Thomas J. Barrett, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., St. Paul, for respondent City of Northfield.

Michael M. Mullins, Gen. Atty., Soo Line R. Co., Minneapolis, for relator Minneapolis, Northfield and Southern Ry., Inc.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Minneapolis, Northfield and Southern Railway, Inc. (M, N & S) appeals from an order of the Commissioner of Transportation determining that a grade crossing should be constructed over its track at the end of Dresden Avenue in Northfield. The railroad contends substantial evidence does not support a need for the crossing, the Commissioner erred by not allocating costs, and the entire cost should be allocated to the City of Northfield. We affirm.

## FACTS

On November 5, 1984 the Northfield City Council passed a resolution requesting a contested case hearing to determine whether there is a need for an additional crossing over M, N and S's tracks in the city.

The tracks of M, N & S and the Milwaukee Road approach the north side of Northfield from different angles to form a V before continuing as parallel tracks into the heart of Northfield. Highway 3 approaches Northfield east of the tracks. It begins to parallel the Milwaukee Road north of the base of the V. Located within the V are a 200-unit mobile home park and a plant employing 500 people.

Cars enter and exit the V area on Fremouw Avenue, a short connector street which crosses the Milwaukee Road tracks and then joins State Highway 3. The intersection of Highway 3 and Fremouw is not controlled by signal lights because of im-

practicability. Turning there is extremely difficult when plant shifts change.

The only alternative access involves a three and one-half mile trip over mainly gravel roads. The city proposes to extend Dresden Avenue to cross the M, N & S track, allowing a western access which avoids Highway 3.

The city's consulting engineer on traffic patterns estimates that if the crossing were opened this year, the traffic volume would be 1500 vehicles per day. He predicts 2000 trips per day by the year 2000, with additional traffic if there is further development within the V.

The administrative law judge concluded the city met its burden of proving the proposed grade crossing is needed to allow a westerly access and to improve east-west traffic flow across the northern part of Northfield. He stated he was:

> convinced that westerly access to the Mobile Home Park and Plant are essential for effective delivery of emergency services and police and fire protection. The Fremouw-Highway 3 intersection is inefficient and dangerous, susceptible to accidents and traffic jams that impede the delivery of essential services. The alternative route to the area, north on Highway 3 for one mile and followed by two to three miles of poor road, is so time-consuming, hazardous and inefficient (especially in bad weather) to amount to no effective access at all.

The ALJ further concluded the crossing should be constructed of rubberized material and should have flashing signal warning devices and gates.

After making minor changes, the Commissioner of Transportation adopted the ALJ's findings, conclusions and recommendations.

## ISSUES

1. Does substantial evidence support the Commissioner's determination there is a need for the proposed crossing?

2. Does the Commissioner have authority to allocate the costs of establishing a new grade crossing?

## ANALYSIS

■ 1. M, N & S states there are five east-west crossings over its tracks in the city and argues the city did not show why these existing crossings are not adequate. We find no merit to this argument. The present east-west crossings do not provide a second access to the V area. They merely feed into the present Highway 3—Fremouw route. Substantial evidence supports the need for a new route which avoids Highway 3 and Fremouw.

2. The administrative law judge did not consider the question of who should pay the cost of constructing the crossing because "Minn.Stat. § 219.072 * * * is concerned only with need, location and type of warning devices." The Commissioner adopted his recommendation. Minn.Stat. § 219.072 provides:

> The establishment of all new grade crossings must be approved by the commissioner. When establishment of a new grade crossing is desired, either by the public officials having the necessary authority or by the railroad company, and the public officials and the railroad company cannot agree as to need, location, or type of warning devices required, either party may file a petition with the commissioner setting forth the facts and submitting the matter for determination. The commissioner, after notice as she or he deems reasonable, shall conduct a hearing and issue an order determining the matters submitted.

Minn.Stat. § 219.072 (Supp.1985).

M, N & S argues the legislature intended that the Commissioner have the same authority to allocate costs that he had under Minn.Stat. § 219.40 (1978). Specifically, it argues there is no substantive difference between the grant of authority in Minn. Stat. § 219.40 and that in the first sentence of Minn.Stat. § 219.072. It also argues the "legislature cannot have intended any substantive changes in the law when the Com-

missioner's authority was transferred from Minn.Stat. § 219.40 to Minn.Stat. § 219.-072." It asks this court to read into Minn. Stat. § 219.072 the same cost allocation authority provided the Board in Minn.Stat. § 219.40 (Supp.1985). That statute provides in part:

Subdivision 1. Board determination. (a) If a complaint is made under section 219.39, the board * * * may * * * divide the cost between the railroad company, the town, county, municipal corporation, or state transportation department interested, on terms and conditions as may seem just and equitable.

  *  *  *  *  *  *

Subd. 3. Order; costs allocated * * * the board * * * may * * * direct that the costs be divided between the railroad company and the public authority involved as the parties may agree, or, if they fail to agree, then as determined by the board on the basis of benefit to the users of each. However, the board may defer determination of the division of costs to a subsequent order to be made on the basis of evidence previously taken.

Minn.Stat. § 219.40 (Supp.1985).

We note initially when the words of a law are clear and free from all ambiguity, the letter of the law may not be disregarded under the pretext of pursuing its spirit. *In re Application for a Change in Corporate Title and Place of Business Filed by First State Bank of Dover*, 372 N.W.2d 79, 81 (Minn.Ct.App.1985); Minn.Stat. § 645.16 (1984).[1]

■ Minn.Stat. § 219.072 is clear. We cannot ignore its plain language by imposing the words of Minn.Stat. § 219.40. Section 219.40 grants authority to the Minnesota Transportation Regulation Board, not the Commissioner. The Board and the Commissioner have entirely different functions. *See* Minn.Stat. § 218.041 (1984). The Board was established in 1980, the same year that Minn.Stat. § 219.072 was created and gave the Commissioner authority over new grade crossings. 1980 Minn. Laws, ch. 460, § 9 and ch. 534. Given this specific and clear statutory scheme, we cannot imply authority to allocate costs where none was granted.

■ M, N & S contends if the Commissioner does not have the authority to allocate costs for the establishment of new grade crossings, the result is absurd. It acknowledges the Board does not have the authority to allocate costs for a new crossing and argues that since the Board has the authority to allocate costs in a number of other railroad matters, the Commissioner must have it in the area of new crossings or no decision at all can be made. We are not persuaded there is any absurd result.

■ We note that while Minn.Stat. § 219.072 does not provide for cost allocation, none is needed. The obligation to assume all burdens incident to new crossings is imposed upon railroads at common law. *State ex rel. City of Minneapolis v. St. Paul, Minneapolis and Manitoba Railway Co.*, 98 Minn. 380, 400, 108 N.W. 261, 268 (1906). Since it has not been modified by statute, it remains in effect. *Compare Soo Line Railroad Company v. Minnesota Department of Transportation*, 304 N.W.2d 301 (Minn.1981) (Commissioner may apportion costs to benefitted users regarding construction of bridges over railroad tracks).

## DECISION

Substantial evidence supports the Commissioner's determination that there is a need for a new grade crossing at Dresden Avenue in Northfield. The Commissioner does not have the authority to allocate the cost of establishing a new grade crossing under Minn.Stat. § 219.072 (1985).

Affirmed.

---

1. Appellant railroad submitted transcriptions of house and senate arguments regarding the amendment of section 219.40 and the creation of section 219.072. That legislative history indicated the 1980 transfer of power from the Commissioner to the Board was not controversial. Lack of controversy and clear wording requires deference be given the plain language.