In the Matter of the RESOLUTION OF the CITY OF AUSTIN Requesting the Commissioner of the Minnesota Department of Transportation to Conduct a Public Hearing to Determine Whether a Public Grade Crossing should be Established Where Fourth Avenue N.E., When Extended, Would Traverse the Right of Way and Track of the Soo Line Railroad Company, d/b/a CP Rail System in Austin, Minnesota.

No. C8–96–2061.

Court of Appeals of Minnesota.

Aug. 6, 1997.

William H. Koch, Ilsley Daniel Colton, Robert M. Hogg, Leonard, Street & Deinard, Saint Paul, for Relator Soo Line Railroad Company.

Kermit Hoversten, Steven J. Hovey, Hoversten, Johnson, Beckmann, Wellmann & Hovey, Austin, for Respondent City of Austin.

Hubert H. Humphrey, III, Attorney General, Kathy Meade Hebert, Assistant Attorney General, St. Paul, for Respondent Commissioner of Department of Transportation.

Considered and decided by HUSPENI, P.J., and WILLIS and SCHULTZ,* JJ.

## OPINION

WILLIS, Judge.

Relator Soo Line Railroad Company (Soo Line) challenges the determination of respondent commissioner that respondent City of Austin (the city) met its burden of proving that a new grade crossing is necessary. Soo Line argues that (1) the commissioner's ruling is not supported by substantial evidence, (2) the ruling is arbitrary and capricious, and (3) the commissioner does not have the authority to determine whether construction of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the proposed grade crossing without just compensation is an unconstitutional taking. We affirm in part and reverse in part.

## FACTS

Soo Line is the only railroad company currently using a railroad yard east of Austin's downtown area. The yard is bounded by Tenth Street Northeast in the west, Eighth Avenue Northeast in the north, Eleventh Street Northeast in the east, and Fifth Place/Fourth Avenue Southeast in the south. In June 1995, the city adopted a resolution to request the commissioner's approval for an extension of Fourth Avenue Northeast from Tenth Street Northeast to Eleventh Street Northeast, which would require a new grade crossing over Soo Line's tracks and right of way. There are grade crossings at Eighth Avenue, approximately 1500 feet north of the proposed extension, and at Fifth Place, approximately 2500 feet south of the proposed extension.

An administrative law judge (ALJ) heard testimony in favor of the extension from the city engineer, the executive director of the Housing and Redevelopment Authority, the city planner, a city council member, the police chief, the fire chief, and a citizen. Soo Line employees testified against the crossing. The ALJ recommended that the commissioner grant the city's petition to establish a public grade crossing. Soo Line filed exceptions. The commissioner granted the city's petition, finding that (1) the extension will improve access within the city by increasing convenience for many residents and reducing traffic congestion on existing roadways between downtown and the east side/Dutchtown area, (2) the extension will improve access between downtown and Dutchtown in the event of flooding, (3) the extension will promote industrial development, (4) the extension will provide more efficient bus routes, and (5) safety concerns do not outweigh the public interest in granting the extension. The commissioner concluded that the city should bear all costs of constructing the grade crossing. Soo Line challenges the commissioner's decision.

## ISSUES

1. Is the commissioner's determination supported by substantial evidence?

2. Is the commissioner's determination arbitrary and capricious?

3. Did the commissioner exceed his authority in determining that establishing a new railroad grade crossing across Soo Line's right of way without just compensation is not an unconstitutional taking of property?

## ANALYSIS

■ The commissioner must approve the establishment of all new railroad grade crossings. Minn.Stat. § 219.072 (1996) (authorizing commissioner to determine need, location, or type of warning devices required); *see also* Minn.Stat. § 219.073 (1996) (directing commissioner, in adopting standards governing public grade crossings, to consider "that the number of grade crossings in this state should be reduced and that public safety will be enhanced by reducing the number of grade crossings"). This court may reverse or modify an agency decision if:

the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

\*　　\*　　\*　　\*　　\*　　\*

(b) In excess of the statutory authority or jurisdiction of the agency; or

\*　　\*　　\*　　\*　　\*　　\*

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1996).

### 1. Evidentiary Support.

■ Soo Line argues that the commissioner's determination that the grade crossing is needed is contrary to law and not supported by substantial evidence. "Applications [for new railroad crossings] should be accompanied by relevant documents, data, and material necessary to show public interest and safety \* \* \*." Minn. R. 8830.2700. The Minnesota Supreme Court has defined substantial evidence as

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977).

Section 219.072 does not define "need" for the purpose of approving a new grade crossing. Soo Line claims that need means "essential," citing *In re Resolution of City of Northfield,* 386 N.W.2d 748 (Minn.App.1986), *review denied* (Minn. July 16, 1986). There, the ALJ found that a proposed grade crossing, which would provide access to an area containing a 200–unit mobile home park and a factory employing 500 people, was "essential" to the effective delivery of emergency services. *Id.* at 750. This court, however, did not adopt the ALJ's terminology in holding that substantial evidence supported the need for a new access route. *Id.* We need only decide whether substantial evidence supports the commissioner's finding of a need for the extension of Fourth Avenue, and we conclude that such evidence exists. The record shows that Fourth Avenue is an important traffic corridor for vehicles and pedestrians from downtown Austin to Dutchtown, which has a population of 667.

The commissioner did not err in finding that Eighth Avenue Northeast and Oakland Avenue Northeast provide the only access to the business district from the area east of the railroad yard between those two roadways. The two alternative routes that Soo Line identifies provide only *indirect* access to the business district. In *Northfield,* this court rejected the railroad's argument that the

proposed crossing was unnecessary because the city had five east-west crossings, finding that the existing crossings did not provide direct access to the relevant area. 386 N.W.2d at 750. Here, the crossings at Eighth Avenue and Oakland Avenue are the only two *direct* access routes to downtown and the west side of the city from Dutchtown. Moreover, the city engineer, the police chief, and the fire chief testified that there is reduced access from the west side of the city to Dutchtown in times of high water and, therefore, that the extension of Fourth Avenue would be a particularly important access route for emergency vehicles at those times.

Further, there is evidence that the proposed extension would (1) improve vehicular traffic flow in general, (2) provide a better route for pedestrian traffic between Tenth Street Northeast and Eleventh Street Northeast because people have been using an unlighted, unsafe path, (3) improve access from Dutchtown to recreational facilities, including a library, a multi-purpose arena, and a YMCA, (4) improve school bus service, (5) promote industrial development because increasing access to the property south of the extension will make it more attractive to potential developers, and (6) enable Austin Utilities to improve the reliability of its electrical service to Dutchtown.

Soo Line contends the commissioner erred in finding that the proposed crossing "complies with the proposed rules," arguing that the commissioner ignored the proposed rule that would require the city to submit an alternatives analysis study. *See* Minn. R. 8830.2710, subpt. 2 (proposed) (requiring road authority that proposes new grade crossing to analyze alternatives to new crossing). Soo Line quotes the commissioner out of context. The quoted language refers to the commissioner's finding that the proposed grade crossing complies with the proposed rules in that the Eighth Avenue and Oakland Avenue crossings are both more than one-quarter mile from the proposed Fourth Avenue Northeast extension. *See* Minn. R. 8830.2710, subpt. 1(B) (proposed) (providing that proposed grade crossing must meet one of five conditions, including providing access

where alternate grade crossing is not available within one-quarter mile in urban area). The record shows that the city did in fact consider safety, traffic, and development problems that exist without a new grade crossing.

■ The evidence also supports the commissioner's finding that the degree of inconvenience to Soo Line is highly speculative. The only tracks that Soo Line uses in the area between Eighth Avenue Northeast and Fifth Place are a main line track for freight service and a coach track to hold cars. Soo Line also has a railroad yard north of I–90 with five tracks for holding cars. Soo Line employees testified that the railroad has been planning to extend the coach track to the yard tracks north of I–90 to create an additional car storage area and, therefore, to reduce the frequency with which the Eighth Avenue crossing is blocked to assemble trains. The commissioner noted that Soo Line's proposed plans to upgrade the tracks will have to be abandoned if the new grade crossing is established. However, the commissioner also noted that evidence of Soo Line's current level of use of its two tracks is not clear. Testimony indicated that there is little visible car storage on the coach track crossing the proposed extension and that there is additional car storage north of I–90. There is thus sufficient evidence to support the commissioner's finding regarding the speculative nature of the inconvenience a new grade crossing would cause to Soo Line.

For the foregoing reasons, we affirm the commissioner's finding that the city met its burden of proving that an extension of Fourth Avenue is necessary to improve emergency vehicle access, pedestrian safety, traffic flow, and development.

## 2. Arbitrary and Capricious.

■ Soo Line argues that the commissioner's ruling that the grade crossing is needed is arbitrary and capricious.

The ruling is arbitrary and capricious if the agency: (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*Minnegasco v. Minnesota Pub. Utils. Comm'n*, 529 N.W.2d 413, 418 (Minn.App. 1995), *rev'd on other grounds*, 549 N.W.2d 904 (Minn.1996). An agency ruling is not arbitrary and capricious if "there is room for two opinions on the matter." *Id.* at 418.

Soo Line claims that the commissioner did not properly balance the known safety risks of a grade crossing with speculative improvements in access, convenience, and safety. Soo Line places undue emphasis on the commissioner's statement that public harm concerns associated with new grade crossings "do not out outweigh the public interest in the increased mobility the [proposed extension] will provide." The commissioner stated that state and federal safety policies to limit and reduce the number of grade crossings "were given substantial consideration" and that

> these policies do not prevent the establishment of a new grade crossing when the public interest, convenience, necessity, *and safety* warrant such establishment.

(Emphasis added.) The commissioner considered the fact that there has been one car-train collision at the Eighth Avenue crossing within the 20–year period immediately prior to his decision and noted the city's argument that increased mobility will *decrease* safety risks because of the improved access for emergency vehicles and pedestrians. The commissioner's decision was therefore not arbitrary and capricious. *See Minnegasco*, 529 N.W.2d at 418.

## 3. Unconstitutional Taking.

■ The commissioner found that the construction of the proposed grade crossing without compensation to Soo Line would not be an unconstitutional taking of property because the state has authority under its police power to establish new grade crossings without compensating railroads. However, police power and eminent domain are distinct concepts. *See Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 40 (Minn.1991). "[T]he question of whether a taking has occurred is

one for the trial court to answer." *Haeussler v. Braun,* 314 N.W.2d 4, 10 (Minn.1981). The city "agrees that the determination of the constitutionality of actions should be left to the [c]ourts," but claims that the issue in this case is moot. Because a taking would entitle Soo Line to compensation, we disagree.

The commissioner exceeded his authority under section 219.072 in ruling on the taking issue. An agency derives its authority from the legislature, and any enlargement of express powers "must be * * * fairly evident from the agency objectives and powers expressly given by the legislature." *Minnegasco,* 549 N.W.2d at 907. Section 219.072 authorizes the commissioner to determine the "need, location, or type of warning devices required," but it does not authorize the commissioner to rule on takings. *See Northfield,* 386 N.W.2d at 750–51 (refusing to imply authority to commissioner to consider who should pay cost of constructing new grade crossing because at that time section 219.072 did not expressly grant authority to do so); *see also* Minn.Stat. § 117.011 (1996) (providing that all bodies that have right of eminent domain must exercise that right as prescribed by chapter 117 except for takings under laws relating to drainage or town roads).

The power of eminent domain is authorized by Minn. Const. art. 1, § 13, which provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor." The city argues that article 1, section 13, does not apply here because the disputed property is public, rather than private, relying on *City of Int'l Falls v. Minnesota, D. & W. Ry. Co.,* 117 Minn. 14, 134 N.W. 302 (1912), where the supreme court concluded that a city was not entitled to compensation when a railroad acquired a right of way across a city street because the "city has no proprietary rights in its streets." *Id.* at 19, 134 N.W. at 304. But while railroad property is considered to be held for a public purpose, in determining property rights it remains private property that "cannot be taken unless done so within the structures of the constitution." *Bolin*

*Lumber Co. v. Chicago & N.W. Ry. Co.,* 270 Minn. 516, 522, 134 N.W.2d 312, 317 (1965).

The city claims that it reserved the right to reestablish a right-of-way across the property at issue here in an 1886 ordinance. Soo Line contends that the ordinance relates only to the reestablishment of a street at "Third Street," which is currently known as Fifth Avenue. Soo Line had no opportunity to present evidence of ownership of the relevant property, and it is entitled to a judicial determination of whether constructing a new grade crossing over its tracks is a taking. *See Haeussler,* 314 N.W.2d at 9; *see also Wegner,* 479 N.W.2d at 42 ("Once a 'taking' is found, compensation is required by operation of law."); Minn.Stat. § 117.075 (1996) (providing that if court finds that taking is necessary, it shall appoint commissioners to report amount of damages to owners).

### DECISION

Substantial evidence supports the commissioner's determination that a new grade crossing is necessary, and the commissioner's decision is not arbitrary or capricious. The commissioner, however, exceeded his authority in determining that construction of the city's proposed grade crossing without compensation to Soo Line is not an unconstitutional taking of property.

**Affirmed in part and reversed in part.**